UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated, | |
| Plaintiff | Case No. |
| v. | *Electronically filed* |
| COOKIE CREWS, in her official capacity as Commissioner of the Ky. Department of Corrections; DENISE BURKETT, in her official capacity as Director of Ky. Dept. of Corrections' Division of Health Services; and APPALACHIAN REGIONAL HEALTHCARE, INC., | |
| Defendants | |

**CLASS ACTION COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.      PRELIMINARY STATEMENT**

1.      Plaintiff Maddilyn Marcum[1] ("Plaintiff"), by counsel, brings this 42 U.S.C. § 1983 action on behalf of herself and all current and future similarly-situated individuals in the custody of the Kentucky Department of Corrections ("DOC") to challenge the ban on public funds being used to provide Hormone Replacement Therapy ("HRT"), as codified at Kentucky Revised Statute ("KRS") § 197.280(2) and (3). Specifically, Plaintiff is a transgender woman who, while in the custody of the DOC, has received HRT for several years under the care of licensed medical

---

[1]      Plaintiff is a transgender woman and this Complaint is filed under her legal name, Maddilyn Marcum. *See In Re: Change of Name for Matthew Paul Smith*, No. 22-P-050 (Lee Dist. Ct. Oct. 11, 2022). For identification purposes, however, Maddilyn Marcum's name with the Ky. Department of Corrections is Matthew Paul Smith, and her Kentucky DOC # is 278317.

providers to treat her diagnosis of Gender Dysphoria. But Plaintiff will now be denied that medical treatment because KRS § 197.280(1)(a) defines "cosmetic service or elective procedure" as "any procedure, treatment, or surgery to enhance or alter the appearance of any area of the head, neck, and body, including … *[p]rescribing or administering cross-sex hormones in amounts greater than would normally be produced endogenously in a healthy person of the same age and sex*'" (emphasis added), and because KRS § 197.280(2) bans public funds from being "used, granted, paid, or distributed for the purpose of providing a cosmetic or elective procedure to an inmate in a correctional facility" irrespective of its necessity to treat a serious medical condition. Moreover, the only exception to this ban is merely temporary, in that if a health care provider determines that immediate cessation of HRT treatment would cause the person physical harm, then public funds may nonetheless be used for continued HRT treatment but only insofar as the treatment is "systematically reduced and eliminated" rather than immediately terminated. KRS § 197.280(3).[2]

Plaintiff and the class seek a declaration that the prohibition on public funds being used for HRT to treat Gender Dysphoria at KRS § 197.280(2) and (3) (the "Public Funds Ban") is unconstitutional, both facially and as-applied. They assert that the Public Funds Ban on HRT care violates their rights under the Eighth and Fourteenth Amendments, and they seek a temporary restraining order as well as preliminary and permanent injunctive relief (in accordance with 18 U.S.C. § 3626) barring all Defendants from enforcing the Public Funds Ban as it relates to HRT care. Plaintiff and the class also assert a claim, pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), against Defendant Appalachian Regional Healthcare, Inc. ("ARH") for declaratory and injunctive relief challenging, on Eighth and Fourteenth Amendment grounds, a

---

[2] This action does not challenge the ban on public funds being used for gender reassignment surgery also contained in KRS § 197.280(2).

2

corporate policy or practice of mandating that its providers, including the providers overseeing Plaintiff's HRT care, enforce KRS § 197.280(2) and (3) by reducing, terminating, or withholding HRT care from patients irrespective of any patient-specific medical judgment of medical necessity or relevant professional medical ethics to the contrary.

## II.   JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions.

3.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff is incarcerated at Northpoint Training Center in Boyle County, Kentucky; thus, a substantial part of the events or omissions giving rise to the claims at issue occurred there.

## III.   PARTIES

### *Class of Incarcerated Individuals*

4.  Plaintiff brings this action on behalf of herself and on behalf of a class of current and future incarcerated individuals in DOC's custody who will be deprived of HRT care due to Defendants' enforcement of KRS § 197.280(2) and (3). The class is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), and it is defined as: "*All current and future individuals in the custody of the Kentucky Department of Corrections, whether housed in a state, county, or local facility, who are either diagnosed with Gender Dysphoria or who meet the criteria for a Gender Dysphoria diagnosis, and who have received, or would receive, gender-affirming hormone therapy treatment for their condition absent such care being terminated or withheld by operation of KRS § 197.280(2) and (3).*"

5.  As defined, the class meets all the requirements of Rule 23(a).

6.      The class is so numerous that joinder of all members is impracticable. According to the legislative sponsor of 2025RS SB 2 (the bill later codified at KRS § 197.280), there were sixty-seven individuals in DOC's custody who were receiving HRT for Gender Dysphoria at the time of the bill's consideration.[3] Thus, because of Defendants' enforcement of KRS § 197.280(2) and (3), those sixty-seven individuals in DOC's custody, which includes Plaintiff, have already lost, or will imminently lose access to, their pre-existing HRT treatment for Gender Dysphoria. Moreover, future class members who will be incarcerated in DOC's custody will be denied HRT care in the first instance *even if* they have been diagnosed with (or meet the criteria for) Gender Dysphoria and such care is medically necessary because of Defendants' future enforcement of KRS § 197.280(2).

7.      There are questions of law and fact common to the class. Specifically, if Defendants are permitted to enforce KRS § 197.280(2) and (3), then all members of the class will be subject to a common harm—the denial of medically appropriate healthcare to treat a serious medical condition. All members thus seek the same relief, *i.e.*, an injunction barring enforcement of KRS § 197.280(2) and (3) insofar as those statutory provisions bar public funds from being used for HRT care. This lawsuit also presents common questions of law, including whether Defendants' enforcement of KRS § 197.280(2) and (3), by reducing, terminating, or withholding HRT care, violates the Eighth and Fourteenth Amendments to the United States Constitution.

8.      Plaintiff's claims are typical of those of the class. She is a transgender individual in the DOC's custody who has been diagnosed with Gender Dysphoria, and who has received, and

---

[3]      AUSTIN SCHICK, *Committee approves bill banning hormone treatment and gender reassignment*, Spectrum News 1 (Feb. 14, 2025), available at https://spectrumnews1.com/ky/louisville/news/2025/02/13/inmate-gender-services-bill (last visited June 3, 2025).

would continue to receive, gender-affirming HRT healthcare but for Defendants' enforcement of KRS § 197.280(2) and (3).

9. Plaintiff is an adequate representative of the class. She does not have conflicts with other members of the class, she seeks the same relief as other members of the class, and she will represent the class fairly and adequately.

10. The class representative is also adequately represented by counsel. Putative class counsel is comprised of lawyers from the American Civil Liberties Union of Kentucky who have significant experience litigating state and federal civil rights cases, generally, as well as experience prosecuting and defending federal class actions cases brought under Rule 23(b)(2), specifically.

11. The requirements of Rule 23(b)(2) are met because Defendants have acted, or will act, on grounds generally applicable to the class by reducing, terminating, or withholding HRT treatment pursuant to KRS § 197.280(2) and (3), and final injunctive and declaratory relief are appropriate respecting the class as a whole.

*Named Plaintiff*

12. Plaintiff Maddilyn Marcum (Ky. DOC # 278317) is an adult citizen of Kentucky, residing in Boyle County, Kentucky, where she is serving a determinate prison sentence at Northpoint Training Center, 710 Walter Reed Road, Burgin, Kentucky 40422.

*Defendants*

13. Defendant Cookie Crews, in her official capacity, serves as the Commissioner of the Ky. Department of Corrections. In that capacity, Commissioner Crews is vested with the authority to "[s]upervise and administer correctional institutions established and operated by" the DOC, including "any divisions of those institutions." KRS § 196.070. Commissioner Crews' official capacity duties also include acting as the Administrator of the DOC's Division of Health

Services, which provides administrative oversight and direction for all aspects of inmate health care. Commissioner Crews' office and principal place of business is located at 275 E. Main Street, Frankfort, Kentucky 40601.

14. Defendant Denise Burkett, in her official capacity, serves as the Director of DOC's Division of Health Services. In that capacity, Director Burkett is responsible for, *inter alia*, the clinical oversight and direction of all aspects of inmate health care. Director Burkett's office and principal place of business is located at 275 E. Main Street, Frankfort, Kentucky 40601.

15. Defendant Appalachian Regional Healthcare, Inc. ("ARH") is a Kentucky-licensed non-profit organization that provides healthcare services. ARH (through its employees) provides, *inter alia*, endocrinology services to DOC inmates, including Plaintiff. ARH's principal office is located at 2260 Executive Drive, Lexington, Kentucky 40505, and its registered agent for service of process is Christi Lee, ARH System Center-Hazard, 101 Airport Gardens Road, Suite 305, Hazard, Kentucky 41701.

## IV.    FACTUAL ALLEGATIONS

*Diagnosis and Treatment of Gender Dysphoria*

16. "Gender identity" is a person's internal sense of belonging to a particular gender.

17. A person's gender identity usually corresponds to the sex they were designated at birth based on their external genitalia. However, transgender people have a gender identity that differs from the sex designated at birth. A transgender man is someone who was designated a female at birth but whose gender identity corresponds to male. And a transgender woman is someone who was designated a male at birth but whose gender identity is female.

18. According to the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders, Fifth Edition, Text Revision ("DSM-5-TR"), "Gender Dysphoria" is

the diagnostic term for the condition experienced by some transgender people of clinically significant distress resulting from the lack of congruence between their gender identity and their sex designated at birth. To be diagnosed with Gender Dysphoria, the incongruence must have persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.

19. Gender Dysphoria is a serious medical condition for which medical treatment is appropriate. *See Phillips v. Michigan Dep't of Corrections,* 731 F. Supp. 792, 799 (W.D.Mich.1990), *aff'd,* 932 F.2d 969 (6th Cir.1991); *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401, 1997 WL 34677, at *3 (6th Cir. 1997) (unpublished).

20. DOC recognizes Gender Dysphoria as a serious medical need. DOC has also recognized and authorized HRT care as an appropriate and necessary medical treatment for several years to treat certain individuals in its custody who have been diagnosed with Gender Dysphoria, including Plaintiff.

21. Defendant ARH recognizes Gender Dysphoria as a serious medical need. ARH, through its licensed medical providers, has recognized and prescribed HRT care as an appropriate and necessary medical treatment to treat certain individuals in DOC's custody who have been diagnosed with Gender Dysphoria, including Plaintiff.

22. If left untreated, Gender Dysphoria causes serious physical and psychological harm. Symptoms of untreated Gender Dysphoria can include, but are not limited to: anxiety, depression, eating disorders, socially-isolating behavior, self-harm, and suicidality.

23. The standard of care in treating Gender Dysphoria aims to resolve the distress associated with the incongruence between a transgender person's designated sex at birth and their gender identity by enabling the individual to live consistently with their gender identity. This can

involve social transition (such as dressing, styling one's hair, and using a name and pronouns that match one's gender identity); HRT care to masculinize or feminize the body; and various surgeries to change primary and/or secondary sex characteristics.

24. Clinical practice guidelines for the treatment of Gender Dysphoria have been published by the World Professional Association for Transgender Health (WPATH) and the Endocrine Society. WPATH is a professional organization of medical and mental health professionals focused on transgender health care and has been issuing these guidelines since 1979. The current version, the Standards of Care for the Health of Transgender and Gender Diverse People, Version 8 (WPATH SOC 8) was published in 2022.[4] The Endocrine Society, which is a professional association of endocrinologists, first issued guidelines for the treatment of gender dysphoria in 2011 and updated the guidelines in 2017.[5]

25. These guidelines are supported by the leading medical and mental health associations in the United States, including but not limited to the American Medical Association, the American Psychiatric Association, and the American Psychological Association. Further, these guidelines recognize HRT as an appropriate treatment for certain individuals diagnosed with Gender Dysphoria.

26. Withdrawing gender-affirming health care from or denying such care to individuals for whom it is medically indicated puts them at risk of significant harm to their health.

---

[4] ELI COLEMAN, *et al.*, *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8, 23 Int. J. of Transgender Health S1 (2022), available at https://wpath.org/publications/soc8/ (last visited June 3, 2025).

[5] *See* WYLIE C. HEMBREE, *et al.*, *Endocrine Treatment of Gender Dysphoric/Gender Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. of Clinical Endocrinology & Metabolism 3869 (2017), available at https://www.endocrine.org/clinical-practice-guidelines/gender-dysphoria-gender-incongruence (last visited June 3, 2025).

27.     For those for whom HRT care has alleviated the distress associated with a diagnosis of Gender Dysphoria, withdrawing such care can be expected to result in a return of the symptoms they were previously experiencing as well as the associated clinically significant distress. Some of the effects of HRT are reversible, so discontinuing that treatment would cause transgender men to lose masculinization and transgender women to lose feminization of their features, exacerbating their Gender Dysphoria.

***KRS § 197.280***

28.     In the 2025 legislative session, Senate Bill 2 ("SB 2"), entitled "An Act relating to correctional facilities," was introduced and eventually passed. It became law without the Governor's signature on March 27, 2025.

29.     Because SB 2 did not contain an emergency clause, it became effective on Friday, June 27, 2025 pursuant to KY. CONST. § 55, as confirmed by Kentucky's Attorney General. *See* OAG 25-05 (Apr. 1, 2025).

30.     SB 2 is codified at KRS § 197.280. And under KRS § 197.280(1)(a), "cosmetic service or elective procedure" is defined as "any procedure, treatment, or surgery to enhance or alter the appearance of any area of the head, neck, and body, including … [p]rescribing or administering cross-sex hormones in amounts greater than would normally be produced endogenously in a healthy person of the same age and sex." This definition of "cosmetic service or elective procedure" thus includes HRT treatment for Gender Dysphoria.

31.     KRS § 197.280(2) provides that "public funds shall not be directly or indirectly used, granted, paid, or distributed for the purpose of providing a cosmetic or elective procedure to an inmate in a correctional facility." And the statute broadly defines "public funds" to include "any

9

money, regardless of the original source of the money," of any state or local governmental entity or subdivision thereof. KRS § 197.280(1)(b)(1)-(3).

32. KRS § 197.280(3) provides a temporary exception to the Public Funds Ban contained in subsection 2, but only insofar as it permits the expenditure of public funds for HRT care if a health care provider determines that immediate termination of such treatment would cause the incarcerated patient physical harm. Even in that scenario, however, the use of public funds for such treatment is limited to that which is necessary while the treatment is "systematically reduced and eliminated."

33. The failure to provide care for a serious medical need in the correctional setting can, by itself, satisfy the objective element for Eighth Amendment deliberate indifference claims. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) ("For example, because a serious medical condition carries with it a serious medical need, when prison officials fail to provide treatment for an inmate's serious medical condition, the inmate has endured an objectively serious deprivation.").

34. Defendants are aware of the substantial risk of harm to Plaintiff and the Class that will result from withholding HRT for the serious medical condition of Gender Dysphoria. And Defendants' enforcement of KRS § 197.280(2) and (3) reflects a conscious disregard of that substantial risk of harm to Plaintiff and the Class.

***Impact of KRS § 197.280***

35. A healthcare provider first diagnosed Plaintiff with Gender Dysphoria in 2009 after years of Plaintiff having struggled with severe depression, suicidal ideation, and a deep sense of disconnect between her internal identity and the sex assigned at birth.

36. After being diagnosed with Gender Dysphoria, Plaintiff commenced Hormone Replacement Therapy ("HRT") under the care of a mental health provider to treat her Gender Dysphoria. Plaintiff's regimen of HRT care for Gender Dysphoria continued for approximately five years prior to the events that led to Plaintiff's incarceration.

37. HRT is a recognized and medically accepted treatment for Gender Dysphoria that includes administration of estrogen and anti-androgens to feminize the body in accordance with one's gender identity.

38. Although Plaintiff's HRT treatment was interrupted during her pretrial detention and the first year of her being in DOC's custody, DOC eventually acknowledged that Plaintiff's Gender Dysphoria diagnosis constituted a medical condition for which the administration of HRT was medically appropriate. Thus, medical providers provided by DOC prescribed HRT to treat Plaintiff's Gender Dysphoria, and DOC allowed Plaintiff to resume that treatment in 2016.

39. Since 2016, Plaintiff's HRT treatment regimen went undisturbed until Kentucky enacted 2025RS SB 2 (codified at KRS § 197.280). That statute's provisions became operative on June 27, 2025.

40. Plaintiff's HRT treatment for Gender Dysphoria has been prescribed and overseen by various providers since 2016 while in DOC's custody. Leading up to the passage of KRS § 197.280, two employees of Defendant ARH—Dr. Edilfavia Mae Suaybaguio Uy and Bonnie Ferguson, APRN—were overseeing and prescribing Plaintiff's HRT treatment for Gender Dysphoria.

41. On May 28, 2025, Bonnie Ferguson, APRN notified Plaintiff that because of the enactment of KRS § 197.280, Plaintiff's HRT treatment regime will be reduced by half starting in August, 2025, and that it will be completely eliminated in November, 2025.

42. Upon information and belief, Defendant ARH adopted a corporate policy, practice, or custom mandating that its providers (including APRN Ferguson and Dr. Uy) must comply with KRS § 197.280(2) and (3) by reducing and eliminating HRT care for patients in DOC's custody irrespective of any previous patient-specific determination of medical necessity, exercise of medical judgment, or relevant professional medical ethics to the contrary.

43. Dr. Uy and APRN Ferguson ordered a reduction and elimination of HRT care (which they previously prescribed to treat Plaintiff's Gender Dysphoria) for reasons unrelated to any patient-specific medical judgment.

44. The decision to reduce and eliminate Plaintiff's HRT care is in accordance with ARH's corporate policy to enforce KRS § 197.280(2) and (3) irrespective of any patient-specific medical judgment of medical necessity or relevant professional medical ethics to the contrary.

45. Dr. Uy and APRN Ferguson's enforcement of ARH's corporate policy to enforce KRS § 197.280(2) and (3) will thus imminently deprive (and ultimately totally deny) Plaintiff and the class of necessary treatment for a serious medical condition in violation of their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

46. Likewise, Defendants Crews and Burkett's official-capacity enforcement of KRS § 197.280(2) and (3) will imminently deprive (and ultimately totally deny) Plaintiff and the Class of medically necessary treatment for a serious medical condition in violation of their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

47. At all relevant times, Defendant ARH, through its employees, agents, and officers, acted under color of state law in adopting and enforcing its corporate policy or custom mandating that its providers enforce KRS § 197.280(2) and (3) irrespective of any patient-specific medical judgment of medical necessity or professional medical ethics to the contrary.

48. At all relevant times, Defendants Burkett and Crews, in their official capacities, acted under color of state law.

49. All Defendants have acted, and continue to act, with deliberate indifference to Plaintiff's and the Class's serious medical needs, and to the substantial risk of serious physical and psychological harm to Plaintiff and the Class that will result from terminating or withholding HRT care for those for whom it is medically indicated.

50. Absent injunctive relief barring enforcement of KRS § 197.280(2) and (3), Plaintiff and the Class will suffer imminent and ongoing irreparable harm by being denied adequate medical treatment for Gender Dysphoria, a serious medical condition, for which there is no other adequate remedy at law.

51. Prior to filing suit, Plaintiff exhausted available administrative remedies with respect to the claims asserted against the Defendants in this action.

## V.     CLAIMS FOR RELIEF

**COUNTS I and II (PLAINTIFF MARCUM ONLY)**
**Eighth Amendment—Denial of Adequate Medical Care (facial and as-applied)**
(***Against Defendants Crews and Burkett in their official capacities***)

52. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

53. Plaintiff has been diagnosed with an objectively serious medical condition, Gender Dysphoria.

54. Without appropriate treatment, Plaintiff's diagnosis of Gender Dysphoria will result in serious and irreparable physical and psychological harm to Plaintiff.

55. Plaintiff has been prescribed, and has continuously received, HRT to treat her Gender Dysphoria since 2016 while in DOC's custody. That medical treatment has been necessary

and appropriate to relieve symptoms attendant to Plaintiff's Gender Dysphoria diagnosis and to prevent Plaintiff from suffering from severe physical and psychological harms.

56. Defendants Crews and Burkett, in their official capacities, are aware that Plaintiff and members of the putative Class have been diagnosed with Gender Dysphoria, and that Plaintiff and members of the putative Class have been receiving HRT to treat their Gender Dysphoria while in DOC's custody.

57. Defendants Crews and Burkett, in their official capacities, are responsible for, *inter alia*, ensuring that Plaintiff and the Class receive adequate and necessary medical treatment for serious medical needs, including treatment for Gender Dysphoria.

58. KRS § 197.280(2) and (3) erect a blanket prohibition upon the direct or indirect use of public funds to provide HRT care to treat Gender Dysphoria, with the sole exception being to temporarily provide HRT care as it is systematically reduced and eliminated for those patients for whom immediate cessation would cause physical harm.

59. The challenged statutory ban on providing HRT to Plaintiff for the treatment of Gender Dysphoria is, on its face, a total denial of care for a serious medical need known to Defendants Crews and Burkett, and their official capacity enforcement of it is deliberately indifferent to the serious medical needs of Plaintiff in violation of Plaintiff's Eighth Amendment rights.

60. Defendants Crews and Burkett's official capacity enforcement of KRS § 197.280(2) and (3), as applied to Plaintiff, will deprive Plaintiff of medically necessary care for an objectively serious medical need in violation of her Eighth Amendment rights.

61. Defendants' official capacity actions of enforcing KRS § 197.280(2) and (3) by reducing and depriving Plaintiff of necessary medical HRT treatment for an objectively serious

medical need has caused, and will continue to cause, Plaintiff severe physical and psychological harm.

62. Defendants have acted, and continue to act, with deliberate indifference to Plaintiff's serious medical needs, and to the substantial risk of serious physical and psychological harm to Plaintiff by enforcing KRS § 197.280(2) and (3).

## COUNT III and IV (CLASS CLAIMS)
### Eighth Amendment—Denial of Adequate Medical Care (facial and as-applied)
(*Against Defendants Crews and Burkett in their official capacities*)

63. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64. The statutory ban on public funds being used, directly or indirectly, for HRT care constitutes a present and ongoing denial of adequate medical treatment for a serious medical need in violation of the Eighth Amendment rights of the Plaintiff and the Class that subjects them to serious, immediate, and ongoing physical and psychological harm warranting the issuance of declaratory and injunctive relief.

65. Plaintiff and the Class have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will continue to cause them irreparable harm.

66. The challenged statutory ban on providing HRT to Plaintiff and the Class for the treatment of Gender Dysphoria is, on its face, a total denial of care for a serious medical need known to Defendants Crews and Burkett, and their official capacity enforcement of it is deliberately indifferent to the serious medical needs of Plaintiff and the Class in violation of their Eighth Amendment rights.

67. The Class members have been diagnosed with (or meet the clinical criteria for a diagnosis of) Gender Dysphoria that will, without necessary and appropriate treatment, result in serious and irreparable physical and psychological harm to the Class.

68. Defendants are therefore aware that current Class members have been diagnosed with Gender Dysphoria, and that they have been receiving HRT while in DOC's custody.

69. Defendants Crews and Burkett, in their official capacities, are responsible for, *inter alia*, providing adequate and necessary medical treatment to Plaintiff and the Class, including treatment for those who have been (or who meet the criteria for) Gender Dysphoria.

70. On its face, the blanket prohibition on the use of public funds to provide HRT care under KRS § 197.280(2) and (3) deprives Plaintiff and the Class of medically necessary care for a serious medical need in violation of their Eighth Amendment rights.

71. Further, Defendants Crews and Burkett's official capacity enforcement of KRS § 197.280(2) and (3), as applied, will deprive current and future members of the Class of medically necessary care for an objectively serious medical need in violation of their Eighth Amendment rights.

72. Defendants Crews and Burkett's actions of enforcing KRS § 197.280(2) and (3) by reducing and depriving the Class of necessary HRT medical treatment for an objectively serious medical need has caused, and will continue to cause, current and future members of the Class severe physical and psychological harm.

73. Defendants Crews and Burkett have acted, and continue to act, with deliberate indifference to Plaintiff's and the Class's serious medical needs, and to the substantial risk of serious physical and psychological harm to Plaintiff and the Class.

## COUNT V (PLAINTIFF MARCUM and CLASS)
### Eighth Amendment—Denial of Adequate Medical Care (*Monell* liability)
### (*Against Defendant ARH*)

74. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

75. Plaintiff has been prescribed, and has continuously received, HRT to treat her Gender Dysphoria since 2016 while in DOC's custody. That medical treatment has been necessary to relieve symptoms attendant to Plaintiff's Gender Dysphoria diagnosis. Current members of the proposed Class have also been diagnosed with Gender Dysphoria and prescribed HRT to treat their condition.

76. Upon information and belief, Defendant ARH has a contract or agreement to provide individuals in DOC's custody, including Plaintiff, with adequate and necessary endocrinology-related medical treatment, including treatment for those who have been diagnosed with (or who meet the criteria for) Gender Dysphoria.

77. Defendant ARH is a third-party corporate entity that provides medical care through its employees to individuals in DOC's custody under color of state law. At all relevant times, therefore, Defendant ARH acted under color of state law.

78. KRS § 197.280(2) and (3) erect a ban on the direct or indirect use of public funds to provide HRT care, including HRT care that is medically necessary for Plaintiff and the Class, with the sole temporary exception being for that period of time necessary to reduce and eliminate such care for whom immediate cessation would cause physical harm.

79. On its face, the ban on public funds being used to provide HRT care for Gender Dysphoria in KRS § 197.28(2) and (3) deprives Plaintiff and the proposed Class of adequate

medical care for a serious medical need in violation of their Eighth and Fourteenth Amendment rights.

80. Upon information and belief, Defendant ARH went further than KRS § 197.280(2) and (3) by adopting a corporate policy, practice, or custom of mandating that its medical provider employees enforce KRS § 197.280(2) and (3) by reducing and terminating patients' preexisting HRT care for non-medical reasons, and by withholding HRT care from future patients for non-medical reasons even if it would be necessary and adequate to treat a serious medical condition, notwithstanding any patient-specific medical judgment or applicable professional medical standards of care to the contrary.

81. Defendant ARH may not lawfully direct its Kentucky-licensed healthcare employees to disregard applicable professional medical standards or standards of care in terminating and withholding medically necessary treatment for objectively serious medical needs.

82. ARH's corporate policy, practice, or custom deprives Plaintiff and the Class of medically necessary care for an objectively serious medical need.

83. ARH's corporate policy, practice, or custom of reducing and depriving Plaintiff and the Class of necessary medical treatment for an objectively serious medical need for non-medical reasons will imminently cause Plaintiff and the Class severe physical and psychological harm.

84. Defendant ARH has acted, and continues to act, with deliberate indifference to the serious medical needs of Plaintiff and the Class, and to the substantial risk of serious physical and psychological harm that will result from reducing, terminating, and withholding HRT care in accordance with its corporate policy, practice, or custom.

**WHEREFORE**, the Plaintiff requests that this Court:

1. Certify this case as a class action under Fed. R. Civ. P. 23(a) and (b)(2);

2. Issue a temporary restraining order and preliminary injunctive relief barring Defendants' enforcement of KRS § 197.280(2) and (3) in accordance with 18 U.S.C. § 3626;

3. Issue permanent injunctive relief barring Defendants' enforcement of KRS § 197.280(2) and (3) in accordance with 18 U.S.C. § 3626;

4. Issue preliminary and permanent injunctive relief barring Defendant ARH, its employees, agents, and officers, from enforcing its corporate policy, practice, or custom of enforcing KRS § 197.280(2) and (3) despite any contrary patient-specific medical judgment or applicable professional medical standards of care;

5. Issue a declaratory judgment finding that KRS § 197.280(2) and (3), as it relates to HRT care, is unconstitutional, both facially and as-applied;

6. Issue a declaratory judgment finding that Defendant ARH's corporate policy, practice, or custom is unconstitutional, both facially and as-applied;

7. Judgment in favor of Plaintiff and the Class;

8. Award Plaintiff her costs, including reasonable attorney fees, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1997e; and

9. Grant any additional relief to which Plaintiff may be entitled.

Respectfully submitted,

/s William E. Sharp
William E. Sharp
Corey M. Shapiro
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746 ext. 218
wsharp@aclu-ky.org
corey@aclu-ky.org
*Counsel for Plaintiff*