UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated,<br><br>      Plaintiff<br><br>v.<br><br>COOKIE CREWS, in her official capacity as Commissioner of the Ky. Department of Corrections; DENISE BURKETT, in her official capacity as Director of Ky. Dept. of Corrections' Division of Medical Services; and APPALACHIAN REGIONAL HEALTHCARE, INC.,<br><br>      Defendants | Case No. 5:25-cv-0238-GFVT<br><br>*Electronically filed* |

**MOTION FOR CERTIFICATION OF A PLAINTIFF CLASS
<u>PURSUANT TO FED. R. CIV. P. 23(b)(2)</u>**

Pursuant to Fed. R. Civ. P. 23(b)(2) and LR 7.1(a), Plaintiff Maddilyn Marcum, by counsel, respectfully moves for: (a) certification of a plaintiff class, as defined below, in the above-styled action; (b) appointment as class representative; and (c) appointment of undersigned counsel as class counsel. In support of her motion, Plaintiff submits the following:

**INTRODUCTION**

This is an action under 42 U.S.C. § 1983 challenging, on Eighth and Fourteenth Amendment grounds, Kentucky's blanket prohibition on public funds being used to provide Hormone Replacement Therapy ("HRT") for incarcerated individuals (the "Public Funds Ban")[1]

---

[1] The action does not challenge Kentucky's statutory ban on public funds being used to provide gender reassignment surgery for incarcerated individuals. [Class Action Complaint ("Compl."), at ¶ 1 n.2.]

codified at Kentucky Revised Statute (KRS) § 197.280(2) and (3). Plaintiff alleges that the Public Funds Ban, both facially and as-applied, constitutes deliberate indifference to the serious medical needs of herself and the class because it terminates previously prescribed (or refuses to provide in the first instance) HRT care for patients who have an objectively serious medical condition—Gender Dysphoria—and for whom HRT care is medically necessary and appropriate. [Compl., at ¶¶ 1, 6, 16-27, 51-73.] Further, the Public Funds Ban is carried out in disregard to the known excessive risks of severe physical and psychological health risks associated with terminating or withholding such care from patients, like Plaintiff and the class, for whom such care is necessary and appropriate.[2] [*Id.* at ¶¶ 18, 20-22, 26-27, 44-49.]

In this motion, Plaintiff seeks certification of a Plaintiff Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2) that includes:

> All current and future individuals in the custody of the Kentucky Department of Corrections, whether housed in a state, county, or local facility, who are either diagnosed with Gender Dysphoria or who meet the criteria for a Gender Dysphoria diagnosis, and who have received, or would receive, gender-affirming hormone therapy treatment for their condition absent such care being terminated or withheld by operation of KRS § 197.280(2) and (3).

[Compl., at ¶ 4.]

Because Plaintiff alleges that the Public Funds Ban for HRT deprives her and the class of constitutionally adequate healthcare for a serious medical need in violation of their Eighth and Fourteenth Amendment rights, she seeks a temporary restraining order as well as preliminary and permanent injunctive relief barring Defendants' enforcement of the Public Funds Ban as it relates

---

[2] "Public funds" is broadly defined under KRS § 197.280(1)(b)(1)-(3) to include: "any money, regardless of the original source of the money, of: [t]he Commonwealth of Kentucky or any department, agency, or instrumentality thereof; [A]ny county, city, local school district, or special district, or any department, agency, or instrumentality thereof; and [a]ny other political subdivision of the Commonwealth or any department, agency, or instrumentality thereof."

2

to HRT care, as well as a declaratory judgment finding that the Public Funds Ban for HRT care is unconstitutional, both facially and as-applied as to her and the class. [Compl., at ¶¶ 1, 49-50, 52-73; *id*. at p. 19.][3]

## ARGUMENT

### I.  CERTIFICATION OF A PLAINTIFF CLASS IS APPROPRIATE.

In deciding a motion for class certification, a court has "broad discretion" to determine whether to certify the class, but it must conduct a "rigorous analysis" to determine if the movant has demonstrated that the proposed class satisfies the prerequisites of Rule 23(a) *and* at least one provision of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000). In seeking class certification, the movant must do more than merely recite the elements under Rule 23; rather, "there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (cleaned up).

Moreover, in addition to Rule 23(a)'s explicit prerequisites—numerosity, commonality, typicality, and adequate representation—a party seeking class certification in this circuit (under Rule 23(b)(1) or (b)(3)) must also demonstrate that the "that the defined class 'is sufficiently definite so that it is administratively feasible for the court to determine whether an individual is a member of the proposed class.'" *Malam v. Adducci*, 475 F. Supp. 3d 721, 731–32 (E.D. Mich. 2020), *amended*, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) (quoting *Young*, 693 F.3d at 537-38). But where, as here, the movant seeks certification under Rule 23(b)(2) for claims seeking

---

[3]  On behalf of herself and the class, Plaintiff also seeks declaratory and injunctive relief against ARH—a private healthcare corporate entity that provides endocrinology services to Kentucky state inmates—under a *Monell* theory of liability. [Compl., at ¶¶ 15, 42-45, 73-83.] And she seeks recovery of attorneys' fees and costs under 42 U.S.C. §§ 1988 and 1997e. [*Id*.]

3

injunctive and declaratory relief only, this "ascertainability" element is not required. *Cole v. Memphis*, 839 F.3d 530, 542 (6th Cir. 2016).

And where, as here, the plaintiff class is comprised of prisoners, the Prison Litigation Reform Act does not alter a court's class certification analysis. *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 369 (5th Cir. 2017) ("The text of Section 3626(a)(1)(A) plainly says nothing at all about class actions or the requirements for class certification. Nor have Defendants directed us to any other provision of the PLRA—or any other statute for that matter—that would support applying Section 3626(a)(1)(A) at the class certification stage. There is therefore no basis for engrafting Section 3626(a)(1)(A)'s requirements onto Rule 23(b)(2)"); *Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 613 (10th Cir. 2008) ("Our holding in *Shook I* was plain: 'Congress did not intend the PLRA to alter class certification requirements under Rule 23.'") (quoting *Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004)).

In this case, all of the requisite elements for certifying a class of plaintiffs are met.

### A. The Class Of Potential Plaintiffs Is So Numerous That Joinder Is Impracticable.

Rule 23(a)'s first requirement is that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976)). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). But in this circuit, "[w]here the number of class members exceeds forty, Rule 23(a)(1) is generally deemed satisfied." *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 696 (W.D. Ky. 2024) (citation omitted); *see also Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting "[t]he

4

modern trend for meeting the numerosity factor is to require at a minimum between 21 and 40 class members") (cleaned up).

Here, the potential class members include "[a]ll current and future individuals in the custody of the Kentucky Department of Corrections, whether housed in a state, county, or local facility, who are either diagnosed with Gender Dysphoria or who meet the criteria for a Gender Dysphoria diagnosis, and who have received, or would receive, gender-affirming hormone therapy treatment for their condition absent such care being terminated or withheld by operation of KRS § 197.280(2) and (3)." [Compl., at ¶ 4.]

When the legislature debated the Public Funds Ban in February 2025, the bill's sponsor indicated that there were *sixty-seven* individuals in DOC's custody who were receiving HRT to treat a diagnosis of Gender Dysphoria. [Compl., at ¶ 6 (citing AUSTIN SCHICK, *Committee approves bill banning hormone treatment and gender reassignment*, Spectrum News 1 (Feb. 14, 2025), available at https://spectrumnews1.com/ky/louisville/news/2025/02/13/inmate-gender-services-bill (last visited June 3, 2025)).] Every one of those sixty-seven individuals (of which Plaintiff is one) will be adversely impacted by the Public Funds Ban because it is depriving them (or will imminently deprive them) of preexisting care for an objectively serious medical need. [Compl., at ¶ 6.] And a class size of sixty-seven people is sufficient to satisfy the numerosity requirement. *See Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *5 (E.D. Ky. Mar. 30, 2021) ("[a] class of 35 can clear the hurdle") (citing *Young v. Nationwide Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012)); *see also In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 595 (3d Cir.2012) ("There is no minimum number of members needed for a suit to proceed as a class action," but "generally if the named plaintiff demonstrates

5

that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") (cleaned up).

Moreover, in addition to these identifiable *current* class members, Rule 23(a)(1)'s numerosity requirement is also satisfied given that the proposed class encompasses those individuals who, in the future, will be: in DOC's custody, diagnosed with (or meet the criteria for a diagnosis of) Gender Dysphoria, and deprived of otherwise medically-indicated gender-affirming HRT care solely because of Public Funds Ban. [Compl., at ¶ 6.] These "potential future class members" may be considered by the court in conducting its Rule 23(a)'s numerosity analysis, but only insofar as their number can be reasonably approximated. *See, e.g.*, *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 165 F.R.D. 87, 88-89 (W.D. Wis. 1996) ("While potential future members of a class may be considered in the numerosity analysis, this is only true to the extent that the Court can reasonably approximate their number") (citing *Valentino v. Howlett*, 528 F.2d 975, 978-79 (7th Cir. 1976)).

Here, the number of future class members who will be affected by the challenged Public Funds Ban can be reasonably approximated by looking to the statistical composition of individuals with Gender Dysphoria within DOC's inmate population. *See, e.g.*, *Charlebois v. Angels Baseball, LP*, 2011 WL 2610122, at *9 (C.D. Cal. June 30, 2011) (unreported) ("Therefore, like the court in *Arnold* noted, '[b]y the very nature of this class, its members are unknown and cannot be readily identified' and the numerosity factor can be met based on statistical, speculative evidence.") (quoting *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994)).

Specifically, as of February 15, 2025, there were 18,645 individuals in DOC's custody. KY. DEPT. OF CORRECTIONS, *Inmate Profiles* (Feb. 15, 2025) at https://corrections.ky.gov/publicinformation/researchandstats/Documents/Monthly%20Report/

6

2025/Inmate%20Profile%2002-2025.pdf (last visited June 6, 2025). And as of January 8, 2025, sixty-seven of those people were receiving HRT to treat Gender Dysphoria, according to the Justice and Public Safety Cabinet's General Counsel, Leah Boggs. JOE SONKA, *Kentucky Senate bill would ban hormone therapy for transgender inmates* (Feb. 10, 2025) at https://www.lpm.org/news/2025-02-10/kentucky-senate-bill-would-ban-hormone-therapy-for-transgender-inmates (last visited June 6, 2025). [*See also* Compl., at ¶ 6 n.3.] Thus, just over one-third of one percent of Kentucky's current inmate population falls within the proposed class. That frequency can reasonably be expected to continue into the future given the prevalence of transgenderism in the U.S. population, generally, and among prisoners, specifically. *See*, *e.g.*, WILLIAMS INSTITUTE, *How Many Adults and Youth Identify as Transgender in the United States?* (June 2022) at https://williamsinstitute.law.ucla.edu/publications/trans-adults-united-states/#:~:text=Our%20estimates%20of%20the%20percent,%2C%20up%20from%2010%25%20previously. (last visited June 6, 2025) (approximately 1.3 million adults, or 0.5% of the U.S. population, identify as transgender); KATE SOSIN, *Trans, imprisoned – and trapped* (NBC News Feb. 26, 2020) at https://www.nbcnews.com/feature/nbc-out/transgender-women-are-nearly-always-incarcerated-men-s-putting-many-n1142436 (last visited June 6, 2025) (reporting that, based on data from 45 states and Washington, D.C., there were 4,890 transgender prisoners incarcerated in state prisons). *See also United States v. Skrmetti*, 605 U.S. --, 145 S. Ct. 1816, 1824 (2025) ("An estimated 1.6 million Americans over the age of 13 identify as transgender, meaning that their gender identity does not align with their biological sex.").

This data establishes a reasonable approximation of the number of prospective future class members who will be adversely impacted by the challenged Public Funds Ban, and the consideration of those future class members reinforces the conclusion that the numerosity element

7

is met. *See Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (Plaintiff's "bare speculation" regarding class numerosity is insufficient, plaintiff must offer information linking the putative class members to the "gravamen" of the plaintiff's claim for liability). Because the present and future class members' size renders joinder impracticable, Rule 23(a)(1)'s numerosity requirement is satisfied.

### B. There Are Common Questions Of Law And Fact.

Fed. R. Civ. P. 23(a)(2) requires that the class have common "questions of law or fact." Despite Rule 23(a)(2)'s reference to common questions of law or fact "in the plural, there need only be one question common to the class – though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802 , 820 (6th Cir. 2003) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)); *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("The commonality requirement is satisfied if there is a single factual or legal question common to the entire class"). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Factual variations in the claims of individual class members will not preclude a finding of commonality. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980).

Here, there are common questions of fact that apply to the entire class, including: (1) whether Gender Dysphoria is a medical condition for which some level of care is necessary and appropriate; and (2) whether HRT care is a necessary and appropriate treatment for some individuals diagnosed with Gender Dysphoria. Similarly, because the Defendants have applied (or will imminently apply) the Public Funds Ban on HRT care to all class members, there are common legal questions such as: (1) whether Gender Dysphoria is an objectively serious medical need

under the Eighth Amendment; and (2) whether Defendants' enforcement of the Public Funds Ban constitutes deliberate indifference to a substantial risk of harm to those diagnosed with (or who meet the criteria for a diagnosis of) Gender Dysphoria. And these questions of law would be dispositive of most of the claims at issue, including the Class claims, and would therefore significantly "advance" the litigation. *See Alkire*, 330 F.3d at 820. Thus, Rule 23(a)(2)'s "commonality" requirement is satisfied.

      **C.**      **The Claims Of The Named Plaintiff Are Typical Of Those Of The Class.**

Fed. R. Civ. P. 23(a)'s third prerequisite is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To satisfy the typicality requirement, the representative plaintiff's interests must be aligned with those of the class." *Powers*, 501 F.3d at 618 (citing *Sprague*, 133 F.3d at 399). Moreover, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflict of interest.

*Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998) (quoting *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.3 (1982)).

Here, Plaintiff's claims are typical of the class claims because they arise from Defendants' enforcement of the statutory Public Funds Ban on HRT care for Kentucky prisoners. That statute

9

affects all class members equally, in that its enforcement will terminate preexisting (or serve to deny in the first instance) HRT care for individuals in DOC's custody who have been diagnosed with (or who meet the criteria for a diagnosis of) Gender Dysphoria. The same event, practice, or course of conduct thus gives rise to Plaintiff's claims as well as those of the class. Further, Plaintiff's claims and those of the class are based on the same legal theories: (1) that the statutory ban on HRT care constitutes an improper denial of adequate medical care for an objectively serious medical condition despite the known substantial risk of harm that will result; and (2) the corporate policy, practice, or custom of enforcing the Public Funds Ban notwithstanding professional medical judgment or ethical standards to the contrary constitutes unlawful deliberate indifference to a serious medical need. Typicality under Rule 23(a)(3) is therefore met. *See, e.g.*, *Raymond v. New York State Dep't of Corr. & Cmty. Supervision*, 579 F. Supp. 3d 327, 339 (N.D.N.Y. 2022) ("In any case, typicality may be assumed where the nature of the relief sought is injunctive and declaratory.") (cleaned up).

### D. The Named Plaintiff Will Fairly And Adequately Protect The Interests Of The Class.

The final prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotations and citations omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

10

Here, the named Plaintiff, Maddilyn Marcum, is serving a determinate sentence at Northpoint Training Center. [Compl., at ¶¶ 1, 12, 35-36.] Plaintiff is a trans woman first diagnosed with Gender Dysphoria in 2009, and she has received HRT treatment while in DOC's custody since 2016. [*Id.* at ¶¶ 1, 35-40.] Thus, Plaintiff is not only a member of the proposed class, but she also possesses the same interest as all other class members in seeking to restore HRT care for those for whom it is medically indicated, such as herself. [*Id.*] Moreover, Plaintiff has suffered (or will imminently suffer) the same injury as the remaining class members, *i.e.*, being deprived of gender-affirming HRT care to treat Gender Dysphoria. Plaintiff thus will vigorously prosecute the claims at issue and does not have any conflict that would prevent her from doing so on behalf of the remaining class members.

Further, Plaintiff's counsel are experienced civil rights attorneys whose collective experience includes both having served as class counsel and as having defended clients against class claims in federal class actions cases, including one in which state prisoners brought a class action case asserting Eighth Amendment deliberate indifference claims. *See A.N.A. v. Breckinridge Cnty. Bd. of Educ.*, No. CIVA 3:08CV-4-S, 2009 WL 891841, at *1 (W.D. Ky. Mar. 30, 2009); *Woodcock v. Correct Care Solutions*, 861 F. App'x 654, 655 (6th Cir. 2021); *Ligas v. Maram*, Case No. 05-cv-04331 (N.D. Ill. June 5, 2011); *Reed, et al v. Advocate Health Care, et al.*, No. 06-C-3337 (N.D. Ill.); *Levine, et al. v. First Am. Title Ins. Co.*, No. 09-842 (E.D. Pa.); *Schultz v. Prudential Ins. Co.*, No. 09-C-2387 (N.D. Ill.); *Cason-Merenda, et al. v. Detroit Medical Center, et al.*, No. 06-15601 (E.D. Mich.); *Slapikas et al. v. First Am. Title Ins. Co.,* 06-0084 (W.D. Pa.); and *Charvat et al. v. Allstate Ins. Co. et al.*, 13-cv-7104 (N.D. Ill.).

Counsel are also employed by the American Civil Liberties Union of Kentucky, a Kentucky non-profit legal services organization dedicated to the protection and advancement of individual

civil liberties in Kentucky through advocacy, education, and litigation. The ACLU of Kentucky is thus committed to providing the necessary resources to vigorously prosecute this action because of the constitutional harms inflicted upon the Plaintiff and the class, as well as the significance of the civil liberties issues implicated by this case. *See, e.g.*, *Cameron v. EMW Women's Surgical Center, P.S.C., et al.*, 664 S.W.3d 633 (Ky. 2023); *Hart v. Thomas*, 422 F. Supp. 3d 1227 (E.D. Ky. 2019); *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012); *Gingerich v. Commonwealth*, 382 S.W.3d 835 (Ky. 2012).

In sum, all putative class members are suffering, or will imminently suffer similar harms as the named Plaintiff due to Defendants' enforcement of the Public Funds Ban on HRT care; thus, they share a common interest with Plaintiff in obtaining adequate medical treatment for their shared condition of Gender Dysphoria. Because the named Plaintiff: (1) is a member of the proposed class; (2) possesses the same interests as the remaining class members; (3) has suffered, or will suffer the same injuries as the class members; and (4) is represented by qualified counsel, Rule 23(a)(4) is satisfied.

**II.    CLASS CERTIFICATION UNDER FED. R. CIV. P. 23(b)(2) IS APPROPRIATE.**

Finally, in addition to the satisfying the class certification requirements noted above, class certification is further supported because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Nagareda, supra, at 132. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class

member would be entitled to an individualized award of monetary damages. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011) (emphasis in original).

Indeed, "[t]he (b)(2) class action was invented for the purpose of facilitating civil rights suits, and much of its use is in that field today." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 2025 WL 950473, at *29 (D.N.M. Mar. 28, 2025) (citing WILLIAM B. RUBENSTEIN, *Newberg on Class Actions* § 4:26 (5th ed.)). "The (b)(2) class action allows civil rights litigants to advocate on behalf of all similarly situated individuals, such as a disenfranchised black voter representing a class of all black voters within an unconstitutionally drawn district *or a jail inmate representing all inmates in an overcrowding case*." *Id*. (emphasis added); *see also Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (Rule 23(b)(2) was "intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices."). Additionally, unlike membership for Rule 23(b)(3) classes, the "precise identity of each class member need not be ascertained here" because "ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016).

Here, this prisoner civil rights action seeks only injunctive and declaratory relief challenging, on Eighth and Fourteenth Amendment grounds: (1) the state's statutory Public Funds Ban on HRT care—a medically accepted (and for those in the class, a necessary) treatment for Gender Dysphoria; and (2) a corporate policy, practice, or custom of enforcing the Public Funds Ban on HRT care irrespective of any patient-specific medical judgment or relevant professional medical ethics to the contrary. [Compl., at ¶¶ 74-84.] Defendants are all tasked with overseeing and providing healthcare to individuals in the custody of DOC, either by virtue of their state employment or contractual obligations. [*Id.* at ¶¶ 13-15.] However, the challenged statute bars the

direct or indirect use of public funds to provide (or authorize in the first instance) HRT to Plaintiff and the other class members and is unrelated to any medical judgment. [*Id.* at ¶¶ 63-73.] Similarly, the challenged corporate policy of Defendant ARH mandates that its employee-providers enforce the Public Funds Ban by reducing and terminating preexisting HRT care from patients for non-medical reasons, and by refusing or withholding HRT care for non-medical reasons from those for whom it would be necessary and appropriate to treat Gender Dysphoria, notwithstanding any patient-specific medical judgment or applicable professional medical standards of care to the contrary. [*Id.* at ¶¶ 74-84.] Thus, Defendants are refusing to provide HRT treatment on grounds that apply generally to the class, *i.e.*, Defendants are terminating or withholding necessary healthcare pursuant to their enforcement of KRS § 197.280(2) and (3).[4] *See*, *e.g.*, *Lebron v. Wilkins*, 277 F.R.D. 664, 668 (M.D. Fla. 2011) (granting class certification under Rule 23(b)(2) in case challenging state statute "that is generally applicable to all members of the class").

### III. THE COURT SHOULD APPOINT PLAINTIFF'S ATTORNEYS AS CLASS COUNSEL

Upon certifying the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). In doing so, courts consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge

---

[4] As is more fully explained in Plaintiff's motion for a temporary restraining order and preliminary injunction, Defendants' enforcement of KRS § 197.280(2) and (3) does not shield them from 8th Amendment liability under the subjective element of the deliberate indifference standard. *See*, *e.g.*, *Johnson v. Sanders*, 121 F.4th 80, 92 (10th Cir. 2024) ("Where a defendant has subjective knowledge that a course of action or inaction required by policy creates or fails to address a serious risk to an inmate's health or safety, he may not escape constitutional liability by disregarding such risk in compliance with the policy. In such circumstances, the Constitution demands more of state actors charged with overseeing the carceral punishment of a convicted prisoner.").

of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)-(B). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As noted above, Plaintiff's attorneys possess substantial federal civil rights litigation expertise. *See, e.g.*, *Miller, et al. v. Davis, et al.*, 576 U.S. 1091 (Aug. 31, 2015) (denying stay); *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019), *abrogated by Lackey v. Stinnie*, -- U.S. --, 145 S.Ct. 659 (2025); *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:20-CV-535-BJB, 2024 WL 1376497 (W.D. Ky. Mar. 31, 2024); *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir.), *aff'd sub nom. United States v. Skrmetti*, No. 23-477, 2025 WL 1698785 (U.S. June 18, 2025); *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1229 (E.D. Ky. 2019); *Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012); *ACLU of Ky. v. McCreary Co., Ky.*, 607 F.3d 439 (6th Cir. 2010); *McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010); *Wilson v. Rees, et al.*, 620 F.3d 699 (6th Cir. 2010); *ACLU of Ky., et al. v. Grayson Co., Ky., et al.,* 591 F.3d 837 (6th Cir. 2009). And in addition to the class action experience previously noted, counsel collectively also have substantial experience representing transgender plaintiffs in civil rights litigation. *See Doe 1 v. Thornbury*, 679 F. Supp. 3d 576 (W.D. Ky.), *rev'd and remanded sub nom. L. W. by & through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), and *aff'd sub nom. United States v. Skrmetti*, No. 23-477, 2025 WL 1698785 (U.S. June 18, 2025).

Moreover, Plaintiff's attorneys are public interest attorneys employed by the ACLU of Kentucky, a Kentucky non-profit affiliate of a national civil rights organization dedicated to the promotion and defense of individuals' civil liberties. Because Plaintiff's counsel are experienced federal civil rights litigators with substantial class action litigation experience, and because the

15

ACLU of Kentucky is committed to devoting the resources necessary to prosecute this litigation and represent the class, Plaintiff's attorneys are adequate class counsel and should be appointed as such. *See, e.g.*, *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 141 n.23 (D.D.C. 2017) (evidence provided by plaintiffs weighed in favor of appointment of class counsel); *Samma v. United States Dep't of Def.*, 2020 WL 4501000, at *10 (D.D.C. Aug. 4, 2020) (same).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that her Motion for Class Certification be granted, that Plaintiff be appointed class representative, and that Plaintiff's counsel be appointed to represent the certified class pursuant to Fed. R. Civ. P. 23(g).

Respectfully submitted,

/s William E. Sharp
William E. Sharp
Corey M. Shapiro
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746 ext. 218
wsharp@aclu-ky.org
corey@aclu-ky.org
*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that on July 14, 2025, I sent this motion *via* Certified Mail, postage prepaid, along with the Complaint and Summons, to the following:

Cookie Crews, Commissioner  
Ky. Department of Corrections  
275 E. Main Street  
Frankfort, Kentucky 40601

Denise Burkett, Director-Medical Services  
Ky. Department of Corrections  
275 E. Main Street  
Frankfort, Kentucky 40601

Appalachian Regional Healthcare, Inc.  
c/o Christi Lee, Registered Agent  
ARH System Center-Hazard  
101 Airport Gardens Road, Suite 305  
Hazard, Kentucky 41701

/s William E. Sharp  
William E. Sharp  
ACLU of Kentucky Foundation

I further certify that on July 14, 2025, I sent this motion *via* electronic mail, along with the Complaint and Summons, to the following:

Leah Cooper Boggs, Acting General Counsel  
Ky. Justice and Public Safety Cabinet  
Leah.boggs@ky.gov

Allison R. Brown, Asst. General Counsel  
Ky. Dept. of Corrections  
Allison.brown@ky.gov

Russell Colemen, Attorney General  
Commonwealth of Kentucky  
servethecommonwealth@ky.gov

Christi Rhea Lee  
Appalachian Regional Healthcare, Inc.  
clee@arh.org

/s William E. Sharp  
William E. Sharp  
ACLU of Kentucky Foundation

17