UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, | ) |
| Plaintiffs, | ) Case No. 5:25-cv-00238-GFVT |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| COMMISSIONER COOKIE CREWS, *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. [R. 4.] Because the Plaintiff has failed to satisfy the requirements of Federal Rule of Civil Procedure 65, her request for a Temporary Restraining Order is **DENIED.** However, the Court will continue analysis of Plaintiff's Motion for Preliminary Injunction after a scheduling conference has been held and additional briefing has been filed.

**I**

Plaintiff Maddilyn Marcum was diagnosed with Gender Dysphoria and placed on Hormone Replacement Therapy (HRT) starting five years prior to her incarceration. [R. 1 at 11.] Prior to Marcum's sentencing, she was held in a county facility where she was not administered HRT. *Id.* Once in the Department of Corrections' (DOC) custody following her sentencing, she was again refused HRT under the DOC's "freeze frame" policy. [R. 4 at 6.] Under the "freeze frame" policy, a prisoner is entitled to receive HRT only if they were receiving HRT when they entered DOC's custody. *Id.* Thus, because the county jail refused to provide the Plaintiff with

HRT during her pretrial incarceration, DOC found that Marcum was not receiving HRT when she entered their custody and was not eligible to receive HRT.  *Id.*

In 2016, DOC reversed course and found that Marcum did qualify for HRT.  *Id.*  Marcum received treatment from 2016-2025, which is when the Public Funds Ban was passed.  *Id.*  Under the Public Funds Ban, "public funds shall not be directly or indirectly used, granted, paid, or distributed for the purpose of providing a cosmetic service or elective procedure to an inmate in a correctional facility."  KRS § 197.280(2).  HRT falls squarely into the definition of a "cosmetic service or elective procedure" as defined by the statute.  *See* KRS § 197.280(1)(a)(1).

After the passage of the Public Funds Ban, Marcum was notified that her dosage would be reduced by one-half beginning some time in August 2025 and eventually completely eliminated some time in November 2025, consistent with the Public Funds Ban.  *Id.* at 7.  Marcum is asking for both a TRO and Preliminary Injunction, as well as a class action certification.  [R. 3; R. 4.]  As grounds, Marcum argues that the Public Funds Ban as it relates to HRT stands in violation of the Eighth Amendment, which bans state actors from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

## II

Rule 65 allows the Court to issue a TRO without notice to the other party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).  In determining whether to

issue a TRO, the Court examines: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (citations omitted).

"[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]" *Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016). This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974)).

The Plaintiff has asked the Court to enjoin Defendants from enforcing or threatening to enforce the Public Funds Ban as it relates to HRT against the Plaintiff or any other similarly situated person. [R. 4-3 at 4.] Per Rule 65, a temporary restraining order may not exceed fourteen (14) days. Fed. R. Civ. P. 65(b)(2). The Plaintiff asserts that her HRT treatment will "be reduced by one-half starting in August, 2025, and that it would be completely eliminated in November, 2025." [R. 4 at 7.] Although the Plaintiff does not state an exact date, even assuming that the change in treatment goes into effect on August 1, 2025, a TRO would not provide the relief the Plaintiff is seeking. If a TRO was granted and the enforcement of the Public Funds Ban was suspended for fourteen days, during which time the Plaintiff is already entitled to receive treatment, it does not automatically follow that Public Funds Ban will not be enforced following the expiration of the TRO. The Court acknowledges the principle that a violation of one's constitutional rights is an irreparable harm. *See, e.g., Deja Vu of Nashville,*

3

*Inc. v. Metro. Gov't of Nashville & Davison County*, 274 F.3d 377 (6th Cir. 2001); *Jones v. Perry*, 215 F. Supp. 3d 563 (E.D. Ky. 2016). But the irreparable harm the Plaintiff alleges is not immediately preventable by means of a temporary restraining order. With that said, expeditiously considering preliminary relief is warranted.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion for Temporary Restraining Order [R. 4] is **DENIED**; and

2. A scheduling conference regarding Plaintiffs' Motion for Preliminary Injunction [R. 4] shall be held telephonically on **Thursday, July 17, 2025** at **1:30 p.m**. in **Frankfort**, Kentucky.

3. To join the teleconference, the parties are **DIRECTED** to call Microsoft Teams Teleconferencing at 1-606-371-5577 and enter Phone Conference ID 773 707 422#.

This the 15th day of July 2025.

Gregory F. Van Tatenhove
United States District Judge