UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated, | |
| Plaintiff | Case No. 5:25-cv-00238-GFVT |
| v. | *Electronically filed* |
| COOKIE CREWS, in her official capacity as Commissioner of the Ky. Department of Corrections; DENISE BURKETT, in her official capacity as Director of Ky. Dept. of Corrections' Division of Medical Services; APPALACHIAN REGIONAL HEALTHCARE, INC., | |
| Defendants | |

**REPLY IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR A PRELIMINARY INJUNCTION [R. 4]</u>**

In opposing Plaintiff's motion for a preliminary injunction, only Appalachian Regional Healthcare, Inc. ("ARH") and the Attorney General offered substantive responses. [R. 24; R. 20.] And in those responses, they assert, *inter alia*, that Plaintiff does not have a substantial likelihood of success on the merits of her claims because: (a) Gender Dysphoria is not an objectively serious medical need under the Eighth Amendment [R. 20, at PageID #205-06]; (b) Plaintiff is not entitled to a particular form of medical treatment under the Eighth Amendment [*id*. at PageID #206-07; R. 24, at PageID #351]; (c) because the Public Funds Ban is enforceable against those for whom HRT is not medically indicated, it is not unconstitutional in all of its applications and therefore is facially valid [R. 20, at PageID #203-04], and (d) as to the *Monell* claim against ARH, the Public Funds Ban is the source of Plaintiff's injury, *not* any corporate policy or practice. [R. 24, at PageID #348,

350-51.] And they contest that irreparable harm would result from denying the injunction. [R. 20, at PageID #208-210; R. 24, at PageID #352-53.] For the following reasons, Defendants err.

I.      **Gender Dysphoria Is An Objectively Serious Medical Need**

First, *only* the Attorney General asserts that Gender Dysphoria is not an objectively serious medical need. [R. 20, at PageID #205.] But the Attorney General fails to cite any judicial decisions adopting such a position. [*Id.*] Indeed, extensive caselaw supports that Gender Dysphoria is an objectively serious medical condition, as does the factual record in this case. Specifically, a medical need is "serious" for Eighth Amendment purposes where it has "been diagnosed by a physician as mandating treatment, or [it is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's treatment." *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 676 n. 10 (E.D. Ky. 2002) (cleaned up); *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) (noting that an objectively serious medical need can be shown where "a doctor has diagnosed a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care.") (citing *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013)).

With respect to the caselaw, many courts have already concluded that Gender Dysphoria is an objectively serious medical need for Eighth Amendment purposes. *See*, *e.g.*, *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1286 (11th Cir. 2020) ("Because both sides and the majority agree that gender dysphoria is an objectively serious medical need, only the subjective element is in dispute."); *Cano v. S.C. Dep't of Corr.*, 2023 WL 10286851, at *14 (D.S.C. July 31, 2023) ("Moreover, the evidence establishes that gender dysphoria is a serious medical condition that causes Plaintiff to suffer from severe psychological distress, including depression, anxiety, urges to harm herself, and suicidal ideation."), *report and recommendation adopted as modified*, 2024

WL 1005553 (D.S.C. Jan. 30, 2024); *Wright v. Parker*, 2022 WL 18586696, at *4 (E.D. Ark. Apr. 11, 2022) ("The Eighth Circuit has recognized gender dysphoria as an objectively serious medical need."), *report and recommendation adopted*, 2023 WL 1766461 (E.D. Ark. Jan. 31, 2023); *Huskins v. Fox*, 2018 WL 3660203, at *2 (W.D.N.C. Aug. 2, 2018) (in allowing inmate complaint to survive initial review under 28 U.S.C. § 1915, noting that "[c]ourts have routinely held that gender dysphoria is a serious medical need for purposes of the Eighth Amendment."); *Gonzalez v. Turner*, 2025 WL 818183, at *5 (W.D. Ky. Mar. 13, 2025) (finding "the first prong of the *Brawner* test is satisfied" because "Plaintiff has demonstrated she had a serious medical need during her incarceration" due to her Gender Dysphoria diagnosis).[1]

Moreover, Defendant ARH's own employees, Dr. Uy and APRN Ferguson (who provide treatment for Gender Dysphoria to Plaintiff and members of the proposed class), confirm that in their medical opinions Plaintiff should continue with her HRT care for the treatment of her Gender Dysphoria diagnosis. [*See* R. 24, at PageID #350 (noting that "APRN Ferguson and Dr. Uy have recommended HRT for Ms. Marcum as well as other inmates with Gender Dysphoria."); R. 24-2: Dr. Uy Aff., at PageID #372 (noting that "[b]ased solely on medical considerations, [she] believes [that Plaintiff] should continue the Estradiol [Hormone Therapy] as indicated in Nurse Ferguson's May 28, 2025, note as long as it is medically indicated."); R. 24-3: APRN Ferguson Aff., at PageID #376 (same); *see also* R. 24, at PageID #350 ("APRN Ferguson and Dr. Uy continue to believe that the standard of care for Ms. Marcum is to continue gender-affirming therapy, yet they must

---

[1]   It also cannot be reasonably disputed that the evidence establishes that Plaintiff has been diagnosed with Gender Dysphoria. [*See* R. 24-2, at PageID #371 ("It is my understanding that Plaintiff Maddilyn Marcum ("Marcum") has been diagnosed with Gender Dysphoria by a mental health professional."); R. 24-3, at PageID #375 (same); R. 24-Sealed Exh. 4, at p. 5 (noting receipt of "psych letter documenting gender dysphoria" diagnosis).]

3

also consider the patient's reality of the eventual statutorily required end of funding for gender-affirming therapy.").]

Dr. Karasic's declaration also supports the conclusion that Gender Dysphoria is an objectively serious medical need. In it, he notes that Gender Dysphoria "is a serious condition which, if left untreated, *can impair a person's ability to function and cause significant depression, anxiety, self-harm and suicidality*." [R. 4-1, at PageID #81 (emphasis added); *id*. at PageID #94.] *See also Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) ("Psychological needs may constitute such 'serious medical needs' particularly when those psychological needs 'result in suicidal tendencies.'") (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). And, indeed, even the Attorney General's own proffered expert acknowledges that Gender Dysphoria is: (a) "a psychological diagnosis with a key feature of distress" [R. 20-1, at PageID #223]; and (b) the "persistent state of distress that stems from the feeling that one's gender identity does not align with one's physical sex." [*Id*.]

Relatedly, the Attorney General's attempt to discredit the risk of harm associated with withholding HRT from those for whom it is medically indicated is likewise insufficient to undermine the conclusion that Gender Dysphoria is an objectively serious medical need. [R. 20, at PageID #205-06.] First, *even if* the evidence-based World Professional Association for Transgender Health's Standards of Care (WPATH SOC) 8 guidelines regarding the treatment of Gender Dysphoria were widely disputed, the necessity of using HRT as a treatment for those diagnosed with Gender Dysphoria and for whom it is medically indicated is also supported by the clinical practice guideline from the Endocrine Society. [R. 4-1, at PageID #87-88, 92.] And the "[g]ender-affirming medical interventions provided in accordance with the WPATH SOC 8 and Endocrine Society Guidelines are widely recognized in the medical community as safe, effective,

4

and medically necessary for many people with Gender Dysphoria." [R. 4-1, at PageID #92.] For those individuals, "no alternative treatments have been demonstrated to be effective." [*Id*. at PageID #92-94.]

Plaintiff (and the putative class members) have been diagnosed with Gender Dysphoria, a medical condition for which Dr. Uy and APRN Ferguson have recommended HRT treatment and for which Plaintiff and the class have been receiving HRT treatment while in DOC's custody. Given their diagnosis, and because of the substantial risks of harm that result if that diagnosis is left untreated, Gender Dysphoria is an objectively serious medical need for Eighth Amendment purposes. [R. 4-1, at PageID #81-82.]

## II. Defendants Improperly Conflate Individualized Medical Decisions With The Requested Injunctive Relief.

Further, the Attorney General and ARH attempt to shift the Court's focus onto the availability of alternative forms of treatment for Gender Dysphoria, and the fact that the Eighth Amendment does not guarantee a particular form of treatment. [R. 20, at PageID #207-08; R. 24, at PageID #351-52.] True enough. But Plaintiff *does not* seek court-ordered relief mandating that DOC officials (or ARH's employees) prescribe and administer HRT to herself and the putative class members. [R. 4, at PageID #70.] That is (or should be) an individualized medical decision. And Plaintiff's medical providers have *already* determined that HRT is medically indicated to treat her (and others') Gender Dysphoria, as is evidenced by the fact that Plaintiff and the putative class members have been receiving HRT while in DOC's custody and by the affidavits of Dr. Uy and APRN Ferguson. [*See* R. 24, at PageID #350 ("APRN Ferguson and Dr. Uy have recommended HRT for Ms. Marcum as well as other inmates with Gender Dysphoria."); R. 24-2; R. 24-3.] Moreover, Dr. Uy and APRN Ferguson have confirmed Dr. Karasic's opinion that HRT, where medically indicated, is appropriate to treat Gender Dysphoria. [*Compare* R. 24-2, at PageID #372

5

and R. 24-3, at PageID #376 *with* R. 4-1, at PageID #81-82, 88-92.] And they both also recommend that Plaintiff continue on HRT at the May 28, 2025 dosage level "as long as it is medically indicated." [R. 24-2, at PageID #372; R. 24-3, at PageID #376.]

Rather, Plaintiff seeks limited injunctive relief blocking enforcement of the statutory obstacle to her providers being able to continue providing the care *that they have already determined (and presently maintain) is medically appropriate* for her and those who have been receiving it, as well as for those future prisoners for whom it would be medically indicated. [R. 1: Compl., at PageID #2, 19; R. 4; R. 4-3.] And the availability of adequate alternative treatments for some individuals diagnosed with Gender Dysphoria is immaterial to those for whom such alternative treatments are not adequate (and for whom their providers have determined that HRT is medically indicated and appropriate), as is the case for Plaintiff and the putative class.[2]

Thus, Defendants' argument that the Public Funds Ban on HRT is permissible because Plaintiff and the putative class members can receive some other alternative treatments in *lieu* of HRT is misplaced because: (a) their treating providers have already made (or would make for future class members) the individualized medical determination that HRT is, indeed, medically

---

[2] The assertion by the Attorney General that the Public Funds Ban does "not bar the prescribing, distribution, or use of HRT by inmates" is without merit because it misapprehends the scope of the statute's reach. [R. 20, at PageID #206.] KRS § 197.280(1)(b)(1) includes within the definition of public funds "any money, regardless of the original source of the money, of [t]he Commonwealth of Kentucky or any department, agency, or instrumentality thereof." And the Public Funds Ban contained in subsection (2) mandates that "public funds shall not be directly or indirectly used, granted, paid, or distributed for the purpose of providing," *inter alia*, HRT. Because prisoners are wholly dependent upon the Commonwealth and its agents for prescribing, distributing, and dispensing medication within correctional facilities, the Public Funds Ban is a *de facto* ban on HRT as a form of treatment within the DOC. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). [*See also* R. 24-2, at PageID #371 (stating that starting in April, 2025, ARH providers were notified by DOC that due to KRS § 197.280, "gender affirming medication would not be administered by the DOC going forward.").]

6

indicated and appropriate to treat their Gender Dysphoria, and (b) the Public Funds Ban erects a blanket ban on that form of medical treatment for current individuals who have been receiving it (and for future individuals for whom it would otherwise be appropriate) that is untethered to any medical justification and irrespective of any contrary medical judgment. That type of categorical denial of a form of medical treatment deemed necessary and appropriate by the medical community for some individuals necessarily violates the Eighth Amendment rights of those prisoners for whom such treatment is medically indicated. *See, e.g.*, *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 247 (D. Mass. 2012) ("While the implementation of some procedure for dealing with treatment recommendations for patients with [Gender Identity Disorder] is undoubtedly an improvement, *the policy is flawed in that it creates blanket prohibitions on some types of treatment that professional and community standards indicate may sometimes be necessary for the adequate treatment of [Gender Identity Disorder]. This blanket ban on certain types of treatment, without consideration of the medical requirements of individual inmates, is exactly the type of policy that was found to violate Eighth Amendment standards in other cases both in this district and in other circuits*.") (emphasis added) (citing *Kosilek v. Moheny*, 221 F.Supp.2d 156, 193 (D. Mass. 2002); *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003); *Fields v. Smith*, 653 F.3d 550, 558-59 (7th Cir. 2011)).

### III. Plaintiff Has A Substantial Likelihood Of Establishing That The Public Funds Ban As It Relates To HRT Is Facially Unconstitutional.

The Attorney General also asserts (incorrectly) that Plaintiff is unlikely to prevail on her facial challenge to the Public Funds Ban because she cannot show "that no set of circumstances exists under which the Act would be valid." [R. 20, at PageID #203 (quoting *U.S. v. Gore*, 118 F.4th 808, 811 (6th Cir. 2024).] The Attorney General reasons that because "there are persons who are diagnosed with gender dysphoria who are not prescribed HRT and who do not need HRT" [*id*. at

7

PageID #203], then the statute is constitutional "in at least some applications." [*Id.*] But that misses the mark because "when assessing whether a statute meets this standard, *the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct*." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 418 (2015) (emphasis added).

Here, the purportedly constitutional applications of the statute advanced by the Attorney General relate to individuals *for whom it has no applicability*. Specifically, the Public Funds Ban (as it applies to HRT) is a non-factor for those individuals for whom HRT is not medically indicated because their providers will not prescribe HRT for them. Thus, their medical care will be unaffected by the statute. *See Fields v. Smith*, 653 F.3d 550, 557 (7th Cir. 2011) (in rejecting government's argument that HRT ban facially valid because it applies equally to all prisoners, noting that the challenged statute "is irrelevant to inmates who are not diagnosed with severe GID and in medical need of hormones").

The fact that the Public Funds Ban is inapplicable to that group of individuals does not save it from a facial challenge here by Plaintiff and a class of individuals whose medical care *is* affected by the Public Funds Ban. "Legislation is measured for consistency with the Constitution by its impact on those whose conduct it affects.... The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Patel*, 576 U.S. at 418 (cleaned up). When properly viewed, therefore, Plaintiff has a substantial likelihood of succeeding on her facial challenge to the Public Funds Ban on HRT care because it imposes a blanket ban on a form of medical treatment that is (and has been) deemed necessary and appropriate for Plaintiff and the putative class. [R. 4, at PageID #60-67; R. 24-2; R. 24-3.] *See Soneeya*, 851 F. Supp.2d at 247; *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("Failing to provide care for a non-medical reason, when that care was recommended by a medical specialist,

8

can constitute deliberate indifference.") (citing *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)).

### IV. Because Plaintiff Has Established A Substantial Likelihood Of Success In Her Challenge To The Public Funds Ban Relating To HRT, ARH's Argument Contesting Her Likelihood Of Success On The Merits Of Her *Monell* Claim Is Misplaced.

ARH also opposes this motion on the additional basis that Plaintiff cannot show a substantial likelihood of success on the merits of her *Monell* claim against it. [R. 24, at PageID #348-51.] But whether (or not) Plaintiff has established a likelihood of success on her *Monell* claim at this pre-discovery stage is immaterial because under Rule 65, "[t]he moving party need only show a likelihood of success on the merits on one claim where there are multiple claims at issue in a complaint." *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, & Kentucky, Inc. v. Cameron*, 599 F.Supp.3d 497, 506 (W.D. Ky. 2022) (citing *Transtex Composite, Inc. v. Laydon Composite, Ltd.*, 2012 WL 5362191, at *2 (W.D. Ky. Oct. 30, 2012); *Schiavo ex rel. Schindler v. Schiavo*, 357 F.Supp.2d 1378, 1384 (M.D. Fla.), *aff'd*, 403 F.3d 1223 (11th Cir. 2005) ("Plaintiffs have asserted five constitutional and statutory claims. To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim"); *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) ("Plaintiff need not demonstrate a likelihood of success on the merits of every claim—rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'")).

Moreover, although Plaintiff's Class Action Complaint references seeking preliminary injunctive relief to enjoin the challenged corporate policy, practice, or custom of ARH [R. 1, at PageID #19], Plaintiff's (narrowly tailored) preliminary injunction motion instead seeks only to enjoin Defendants' enforcement of KRS § 197.280(2) and (3) insofar as the statute imposes a blanket ban on HRT care. [R. 4; R. 4-3, at PageID #125.]

9

### V.   Plaintiff Has Established The Requisite Irreparable Harm That Would Result From Denying The Requested Injunctive Relief.

Finally, both the Attorney General and ARH assert that the claimed harm that Plaintiff and the putative class would suffer from being denied HRT care (that they are currently (or were) receiving under the care of their healthcare providers prior to the passage of KRS § 197.280) is "speculative" at best, and in any event does not rise to the level of irreparable harm. [R. 20, at PageID #208-10; R. 24, at PageID #352-53.] But that is incorrect.

Plaintiff has established that she was first diagnosed with Gender Dysphoria in 2009, and that since commencing HRT soon afterwards she saw that care play a "life-saving role" in her well-being. [R. 4-2, at PageID #117-18.] Further, she identified the serious adverse health effects she suffered from being denied her HRT care during her period of pre-trial detention and upon initially being transferred to DOC's custody. [*Id*. at PageID #118.] She suffered various physical ailments, and her psychological health also deteriorated to the point of her suffering from "deep depression" and persistent suicidal ideations. [*Id*.] And she identified the positive health effects she experienced after DOC reversed course in 2016 and approved a comprehensive treatment plan for her that included HRT care. [*Id*. at PageID #119.]

Dr. Karasic observes that withdrawing or denying gender-affirming medical care for those for whom it is medically indicated "would put them at risk of significant harm to their health and well-being, including heightened risk of self-harm and suicidality." [R. 4-1, at PageID #82, *id*. at PageID #89, 92-94.] And Plaintiff's own healthcare providers have established that "based solely on medical considerations," they believe that Plaintiff "should continue the Estradiol as indicated in Nurse Ferguson's May 28, 2025, note as long as it is medically indicated." [R. 24-2, at PageID#372; R. 24-3, at PageID #376; *see also* R. 24, at PageID #346-47 ("The ARH providers' medical recommendation would be that the medication be continued for as long as it is medically

10

indicated"); *id*. at PageID #350 (acknowledging that "APRN Ferguson and Dr. Uy continue to believe that the standard of care for Ms. Marcum is to continue gender-affirming therapy").]

Plaintiff thus adequately established irreparable harm in the increased physical and psychological injury from denial of gender-affirming HRT care that her providers determined is both necessary and appropriate. *See, e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 797–98 (9th Cir. 2019) (irreparable harm established from "severe, ongoing psychological distress and the high risk of self-castration and suicide"). This same analysis also applies to the putative class members who Dr. Uy and APRN Ferguson also treated with HRT because it is medically indicated, and these patients will also be imminently deprived of necessary care because of KRS § 197.280(2) and (3). [*See* R. 24, at PageID #350 ("APRN Ferguson and Dr. Uy have recommended HRT for Ms. Marcum as well as other inmates with Gender Dysphoria"); R. 24-2, at PageID #371 (Dr. Uy explaining that starting in April, 2025, ARH providers were advised "that, due to the passage of KRS § 197.280, gender affirming medication would not be administered by the DOC moving forward.").]

This harm is not merely "speculative." It is correct that KRS § 197.280(3) contains a "tapering" provision whereby public funds may continue to be used for HRT for those individuals for whom immediate cessation "would cause physical harm," as determined by their health care provider. Despite the fact that "tapering" an individual's HRT is an acknowledgement by the health care provider that immediately terminating the care would cause the person *physical harm*, the statute nonetheless mandates that the HRT treatment be "systematically reduced and eliminated" without regard to any medical judgment to the contrary. KRS § 197.280(3). There is nothing speculative about the application and enforcement of the Public Funds Ban on HRT. It is being used to withdraw HRT care from those individuals for whom it is medically indicated and who

11

have been receiving it, and it is being used (or will be used) to deny HRT care to those future individuals for whom such care is medically indicated. [R. 24, at PageID #346 ("Wellpath and DOC advised that, due to the new law, gender-affirming medication would not be administered by the detention facilities moving forward and they discussed ways to step the medication down.").]

## CONCLUSION

For the forgoing reasons, as well as those contained in her initial motion, Plaintiff respectfully requests that the Court grant this Motion for a Preliminary Injunction.

Respectfully submitted,

/s William E. Sharp
William E. Sharp
Corey M. Shapiro
Bethany N. Baxter
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746 ext. 218
wsharp@aclu-ky.org
corey@aclu-ky.org
bbaxter@aclu-ky.org
*Counsel for Plaintiff*

12

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, I filed the foregoing *via* the Court's CM/ECF filing system, which will send electronic notice to the following:

Justin D. Clark
Victor B. Maddox
Aaron J. Silletto
Lindsey R. Keiser
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Justind.clark@ky.gov
Victor.maddox@ky.gov
Aaron.silletto@ky.gov
Lindsey.keiser@ky.gov
*Counsel for Intervening Defendant Ky. Attorney General*

Stephen S. Burchett
K. Brad Oakley
M. Jane Brannon
Jennifer Horan
JACKSON KELLY PLLC
100 West Main Street, Suite 700
P.O. Box 2150
Lexington, Kentucky 40588-2150
Stephen.burchett@jacksonkelly.com
kboakley@jacksonkelly.com
mjbrannon@jacksonkelly.com
Jennifer.horan@jacksonkelly.com
*Counsel for Defendant ARH*

Angela T. Dunham
Allison R. Brown
Justice & Public Safety Cabinet
Office of Legal Services
125 Holmes Street, 2nd Floor
Frankfort, Kentucky 40601
Angela.dunham@ky.gov
Allison.brown@ky.gov
*Counsel for Defendants Crews and Burkett*

/s William E. Sharp
William E. Sharp
ACLU OF KENTUCKY FOUNDATION