UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated,<br><br>      Plaintiff<br><br>v.<br><br>COOKIE CREWS, in her official capacity as Commissioner of the Ky. Department of Corrections; DENISE BURKETT, in her official capacity as Director of Ky. Dept. of Corrections' Division of Medical Services; and APPALACHIAN REGIONAL HEALTHCARE, INC.,<br><br>      Defendants | Case No. 5:25-cv-0238-GFVT<br><br>*Electronically filed* |

**REPLY IN SUPPORT OF MOTION FOR CERTIFICATION
OF A PLAINTIFF CLASS PURSUANT TO FED. R. CIV. P. 23(b)(2)**

   Defendants Appalachian Regional Healthcare, Inc. ("ARH") and the Commonwealth of Kentucky *ex rel.* Attorney General Russell Coleman (the "Attorney General") oppose class certification, but they fail to rebut Plaintiffs' demonstration that the requirements of Rule 23 are satisfied.[1] [R. 22; R. 29.] First, Defendants contend that the number of putative class members is too small and that joinder would be practical. [R. 22, at PageID# 333-335; R. 29 at PageID# 439-445.] This argument fails because it ignores the ample case law that provides that a class this size typically meets the numerosity requirement, and because it fails to account for the other factors

---

[1] Defendants Crews and Burkett, in their official capacity as Kentucky Department of Corrections ("DOC") officials, filed no opposition to the Motion for Class Certification.

used to determine whether joinder would be impracticable. Next, Defendants contend that Plaintiff[2] fails to satisfy the commonality, typicality, and adequacy requirements because of the need for individualized medical assessments. [R. 22, at PageID# 335-338; R. 29, at PageID#446-452.] Those arguments likewise fail because they ignore the actual challenge at issue. Here, Plaintiff challenges Kentucky's blanket prohibition in KRS §197.280(2) and (3), banning the use of public funds to provide Hormone Replacement Therapy for incarcerated individuals (the "Public Funds Ban"), as violative of the Eighth and Fourteenth Amendments. [R. 1.] Plaintiff challenges the system-wide law that precludes that treatment for a class of individuals for whom the individualized assessment for that very treatment has already been (or will be) performed by the medical providers hired by the Kentucky Department of Corrections. Plaintiff meets all the requirements for class certification under Rule 23, and class certification is not only permissible; it is the most appropriate and efficient way to resolve the same legal claims for the numerous people in the proposed class – all of whom will be denied the same medical care that they would receive absent the Public Funds Ban.

---

[2] Plaintiff respectfully requests the parties use Ms. Marcum's preferred pronouns of she/her. Using parties' preferred pronouns is a practice incorporated into many state and federal local rules of practice because it cultivates fairness and equal treatment, the appearance of the same, and earns the public's trust and confidence. The U.S. Supreme Court and Sixth Circuit have adopted the practice of using parties' preferred pronouns, See e.g. *Bostock v. Clayton Cnty., Georgia,* 590 U.S. 644 (2020); *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023); *Fedder v. CEMS of Ohio, Inc.,* No. 24-3028, 2024 WL 5319224 (6th Cir. Nov. 6, 2024); *Dijon v. Cent. Ohio Transit Auth.,* No. 22-3884, 2023 WL 4080153 (6th Cir. June 20, 2023); *Siefert v. Hamilton Cnty.*, 951 F.3d 753 (6th Cir. 2020); *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844 (6th Cir. 2017); *Nash v. United States*, No. 17-3739, 2018 WL 3424999 (6th Cir. Jan. 10, 2018).

I.  **CERTIFICATION OF A PLAINTIFF CLASS IS APPROPRIATE.**

    A.  **The Class Definition Is Adequately Defined.**

The Attorney General asserts that the class definition is too vague. [R. 29, at PageID# 430-438.] Instead of explaining how the definition is imprecise, he focuses his argument on whether the use of HRT is appropriate. [*Id*.] Such an argument is misplaced in this case, and certainly misplaced in the context of a motion for class certification. As an initial matter, the class is defined to include only those for whom a medical provider has determined or will determine HRT is medically appropriate and would be entitled to receive such care but for the Public Funds Ban. [R. 3.] Plaintiff and the current class members have already been prescribed and given HRT by the DOC. [R. 24, at PageID #350 ("APRN Ferguson and Dr. Uy have recommended HRT for Ms. Marcum as well as other inmates with Gender Dysphoria"); R. 24-2; R. 24-3.] While the Attorney General argues Plaintiff's assertion of "medical necessity [and Eighth Amendment claim] rests entirely on the declaration of Dr. Dan Karasic" [R. 29, at PageID# 436], the record demonstrates otherwise. Indeed, the endocrinologist hired to provide recommended treatments to the DOC for individuals diagnosed with Gender Dysphoria, submitted an affidavit stating that "[b]ased solely on medical considerations, I believe Marcum should continue the [HRT] as indicated in Nurse Ferguson's May 28, 2025, note as long as it is medically indicated." [R. 24-2, at PageID #372.] Thus, the government itself has answered the question of whether the care is currently medically indicated and necessary. The class consists of those individuals, like Plaintiff, for whom DOC or its contractors have recommended HRT. There is nothing vague or unknown about that definition nor does it require a separate individualized assessment. Those assessments have already been done. Indeed, the objective criteria is the same for those class members as it is for Marcum— whether the individual would be receiving HRT absent the Public Funds Ban based on a medical provider's assessment.

### B. The Numerosity Requirement is Satisfied.

Both the Attorney General and ARH contend that a class of at least 67 individuals incarcerated throughout Kentucky (few of whom, if any, would possess the necessary resources to engage private counsel and litigate this issue) is insufficient to satisfy the numerosity requirement. [R. 22, at PageID#333-335; R. 29, at PageID# 438-440.] Yet that argument ignores well-settled law throughout this Circuit.

The numerosity requirement is not a strict test nor is there a specific threshold as Defendants concede. [R. 22, at PageID #334; R. 29, at PageID# 438,440.] The question is whether joinder of all members is impracticable. While the requirement is frequently satisfied by the numbers alone, "[i]n determining practicability, a court should also consider the geographic dispersion of the proposed class, the sophistication of proposed class members, and the reluctance of individual class members to sue." *Woodcock v. Correct Care Sols., LLC*, No. 3:16-CV-00096-GFVT, 2019 WL 3068447, at *4 (E.D. Ky. July 12, 2019) (citing 7A Wright & Miller, *Federal Practice and Procedure* § 1762 (3d. ed.)). Courts frequently agree that requiring incarcerated people to separately challenge a government policy would be inappropriate based on these factors. *Dodson v. CoreCivic*, No. 3:17-CV-00048, 2018 WL 4776081, at *2 (M.D. Tenn. Oct. 3, 2018) ("as to the ability of the class members to pursue individual actions, inmates often pursue *pro se* actions, but the Court notes that prisoners often have limited opportunities to litigate their grievances. Moreover, separate, individual actions for the specific injunctive relief sought here could result in overlapping and even inconsistent rulings."); *Ackerman v. Washington*, No. CV 13-14137, 2018 WL 3980876, at *1–2 (E.D. Mich. Aug. 21, 2018)*; Taber v. McCracken Cnty.*, No. 5:06-CV-144-R, 2008 WL 5101684, at *4 (W.D. Ky. Nov. 26, 2008) ("The Court also recognizes that the nature of the class members, current and former inmates, would likely increase the difficulty of joinder.").

Notwithstanding Defendants' contention that the class is geographically concentrated, the class members are housed in various facilities throughout the state. [R. 22, at PageID# 334-335; R. 29, at PageID# 439.] Defendants cite no authority suggesting that a state-wide class of incarcerated individuals has ever been construed as "practical" for joinder purposes. *Cf. Woodcock*, 2019 WL 3068447, at *5 (certifying a class of incarcerated individuals and noting "the geographic dispersion of the potential members across the state of Kentucky").

The likelihood of these putative class members bringing individual lawsuits is also low, particularly in light of the filing fee, which is not waived for indigent prisoners (although it can be paid incrementally). *See* 28 U.S.C. § 1915. "Moreover, these individuals are unlikely able to afford counsel to represent them and finding pro bono counsel is difficult. Judicial economy therefore is promoted by joining their claims in one action." *Ackerman*, 2018 WL 3980876, at *1–2. Even if plaintiffs had the sophistication and resources to bring their claims individually, plaintiffs may be deterred from doing so given the waiver of medical confidentiality that it entails and the prospect of being subjected to public scorn and ad hominem attacks. [R. 29 at PageID 450-451, n.4; R. 20-1 at Page ID# 249-50, ¶¶ 153-60.]

Defendant ARH also contends that Plaintiff relies on speculation and hearsay in claiming there are 67 current class members. [R. 22, at PageID# 332, n.1, 334.] Defendants, however, ignore the news article referencing legislative testimony from Justice and Safety Cabinet general counsel Leah Boggs. There is no reason for the Court to reject such a statement.[3]

---

[3] To the extent the Court requires additional evidence of numerosity to decide this motion, Plaintiff respectfully requests the opportunity to conduct limited discovery on that point. Indeed, both ARH and the Attorney General concede that the number of individuals in DOC custody who are receiving HRT to treat Gender Dysphoria are "easily identifiable." [R. 22, at PageID #335; R. 29, at PageID #439 (same).]

Finally, while the Attorney General spends significant time attempting to claim that courts in the Sixth Circuit have not adopted the generally accepted proposition that 40 or more class members typically satisfies the numerosity requirement, this Court has made that very observation. [R. 29, at PageID# 439-442.] In *Estes v. Willis & Brock Foods, Inc.*, this Court explained the numerosity (and other standards) were "easily met. The class included 120 members, three times the number of members typically sufficient to satisfy the numerosity requirement." *Estes v. Willis & Brock Foods, Inc.*, No. 6:18-CV-00197-GFVT, 2022 WL 697976, at *5 (E.D. Ky. Mar. 8, 2022) (citing *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 WL 1031008, at *10 (W.D. Ky. Mar. 17, 2021)). *See also Snead v. CoreCivic of Tennessee, LLC*, No. 3:17-CV-0949, 2018 WL 3157283, at *11 (M.D. Tenn. June 27, 2018) ("This court has observed that as few as forty class members may satisfy the numerosity requirement.").

### C. The Commonality and Typicality Requirements of Rule 23(a) are met.

Throughout their opposition briefs, Defendants contend that the typicality and commonality requirements of Rule 23(a) are not satisfied because of the fact-specific medical circumstances of each class member. [*See, e.g.,* R. 22, at PageID# 336-37; R. 29, at PageID# 447, 449.] These arguments ignore the objective nature of the putative class and demonstrate a fundamental misunderstanding of the allegations.[4] This case is about a blanket policy prohibiting the use of public funds for certain treatments recommended by the medical staff hired by the Department of Corrections. Such an action challenging the constitutionality of a systemwide *policy* is uniquely suited for class certification. *See J.B-K-1 v. Meier*, No. 3:18-CV-00025-GFVT, 2020

---

[4] *See, e.g.*, R.22, at PageID #336 (ARH asserting (incorrectly) that Plaintiff and the class are alleging that they "are entitled to class-wide injunctive relief compelling the Defendants to provide class members with gender-affirming hormone treatments."). Neither Plaintiff nor the class seek that relief. [R. 1; R. 4.]

6

WL 1227761, at *6, n.2 (E.D. Ky. Mar. 13, 2020) ("[m]any courts have held that when the legality of the defendant's standardized conduct toward all members of the proposed class is at issue, the commonality factor is ordinarily met") (citations omitted).

According to Defendants, because this case involves a claim that turns on both objective and subjective factors, the individual inquiries required under such analysis render commonality and typicality impossible. [R. 22, at PageID# 336; R. 29, at PageID# 432-433.] Accepting such an argument would suggest that courts could never certify classes that are challenging government policies under the Eighth Amendment. Yet even a cursory review of the caselaw demonstrates that courts both in this Circuit and others do, in fact, certify classes in such circumstances. *See, e.g., Parsons v. Ryan,* 754 F.3d 657, 686 (9th Cir. 2014); *Postawko v. Missouri Dep't. of Corr.*, No. 2:16-CV-04129-NKL, 2017 WL 3185155 (W.D. Mo. July 26, 2017), 2017 WL 3185155, at *14; *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 101 (E.D.N.Y. 2013) (certifying Rule 23(b)(2) class of prisoners alleging systemic Eighth Amendment violations).

This Court also rejected these same arguments a few years ago in *Woodcock v. Correct Care Solutions, LLC*, explaining that the common question was whether the policies and procedures regarding treatment of individuals diagnosed with a medical condition (chronic Hepatitis C Virus) constitute deliberate indifference to a serious medical need. *Woodcock*, 2019 WL 3068447, at *5.

Moreover, in two recent challenges to a similar government policy against hormone therapy in prisons, both a district court in Idaho and in the District of Columbia certified a similar class. In *Robinson v. Labrador,* 747 F. Supp. 3d 1331, 1334-37 (D. Idaho 2024), the court found that the commonality and typicality requirements were met despite similar claims that

7

individualized medical assessments would be necessary. With respect to commonality, the *Labrador* court noted:

> The Act imposes a blanket prohibition on hormone therapy, even for those to whom such therapy has been prescribed by a medical professional. Whether this prohibition is medically unacceptable as to those who would otherwise be eligible and whether it requires prison medical personnel to consciously disregard excessive risks to the health of the proposed class members are questions common to the proposed class. If these questions are answered in the affirmative, the Act violates the Eighth Amendment rights of the class. If answered in the negative, the class's claim will fail. While the individual medical circumstances of each inmate may vary, the settlement of these questions will resolve issues central to the validity of each of the class members' claims "in one stroke." *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541.

747 F. Supp. 3d at 1345 (footnote omitted).

The court in *Kingdom v. Trump* reached the same conclusion regarding commonality and typicality using the very logic Plaintiff asks this court use. There, the court agreed that the plaintiffs were not seeking to mandate defendants give any given person a specific diagnosis or treatment, holding that "the questions that the plaintiffs *do* present, *i.e.*, whether a uniform policy prohibiting people with a given medical condition from receiving a certain treatment for that condition violates the Eighth Amendment or the Administrative Procedure Act, *are* amenable to judicial consideration without the Court wading into a thousand personalized medical assessments." *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *14 (D.D.C. June 3, 2025) (emphasis in original).

### D. The Named Plaintiff Will Fairly And Adequately Protect The Interests Of The Class.

Both Defendants also argue that Plaintiff is not an adequate class representative because her medical needs and injuries are not typical of the rest of the class. [R. 22, at PageID #336, R. 29, at PageID# 448-452.] That argument fails for the same reasons it fails under the commonality and typicality requirement – the issue is not an individualized harm or medical need. *See Gen. Tel.*

8

*Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982) ("[Commonality and typicality] also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest"); *Woodall v. Wayne Cnty.*, No. 20-1705, 2021 WL 5298537, at *4 (6th Cir. Nov. 15, 2021) ("the adequacy of representation requirement can merge with the commonality and typicality requirements of Rule 23(a)"); *Beckhart v. Jefferson Cnty. Pub. Sch. Bd. of Educ.*, No. 3:15-CV-00751-GNS-CHL, 2017 WL 4125758, at *5 (W.D. Ky. Sept. 18, 2017). Indeed, adequacy is satisfied because Plaintiff and proposed class members all face the same exact legal injury – an unconstitutional denial of prescribed medical treatment from the challenged law.[5]

### E. Class Certification Under Rule 23(b)(2) Is Proper

Civil rights cases involving unconstitutional, class-based discrimination are paradigmatic Rule 23(b)(2) examples. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011) (cleaned up); *Doster v. Kendall*, 48 F. 4th 608, 615 (6th Cir. 2022). Rule 23(b)(2)'s requirements are met when, as here, members of a proposed class seek uniform relief from a policy or law that is generally applicable to the class as a whole. Here, Plaintiff seeks relief from the Public Funds Ban which is generally applicable to the class. Defendants nevertheless claim it does not apply uniformly because an individualized assessment or inquiry into the medical needs of each class member would be required to determine the appropriate relief. [R. 22 at 8; R. 29 at 27-28.] Again, Plaintiff is not challenging DOC's individualized assessments given *only* those individuals who have been prescribed or would be prescribed HRT are members of the class. Plaintiff is challenging

---

[5] The Attorney General, however, goes further – and outside the traditional two-prong criteria used in the Sixth Circuit – attempting inappropriately to malign Plaintiff. [R. 29, at PageID# 450-452.] The facts of the two cases the Attorney General relies on are wholly inapplicable and there is simply no basis to suggest that Plaintiff is unwilling to vigorously prosecute the case.

9

the Public Funds Ban which is a *blanket prohibition* on HRT. Indeed, Defendants' arguments necessarily misconstrue the nature of the claims and ignore the multiple courts that have certified classes under Rule 23(b)(2) in cases involving Eighth Amendment claims in which plaintiffs challenged the constitutionality of a prison policy, including this one. *See, e.g., Kingdom v. Trump*, 2025 WL 1568238, at *16 (D.D.C. June 3, 2025) ("Rather than reflecting an 'individualized assessment,' this comprehensive, blanket policy to end hormone therapy is the exact type of "generally applicable" policy that a Rule 23(b)(2) class action can properly seek to enjoin."); *Robinson*, 747 F. Supp. 3d at 1348-49 (certifying Rule 23(b)(2) class of Idaho prisoners challenging similar Public Funds Ban under Eighth Amendment); *Woodcock*, 2019 WL 3068447, at *8 (in issuing injunctive relief "the Court would not be "'second guessing' the decisions of healthcare providers" as Defendants allege. Instead, Plaintiffs request the Court review the established procedures to ensure Defendants are providing a standard of care that does not violate constitutional standards.")

Finally, the Attorney General seeks to inject a cautionary warning into this relatively routine and uncontroversial decision by citing a recent non-precedential concurring opinion from Justice Alito. [R. 29, at PageID# 454-56.] The only example provided of this alleged "abuse" is the recent Supreme Court decision in *Trump v. J.G.G.,* 604 U.S. ___, 145 S. Ct 1003, 1005-06 (2025), in which the Court never even summarized, questioned, or rejected the lower court's class certification. Rather, as the Attorney General concedes, the Supreme Court only vacated the district court's decision for lack of venue. Nothing in that decision or any other decision suggests that this Court should depart from a long history of certifying Rule 23(b)(2) classes challenging state-wide policies or laws. Certifying a Rule 23(b)(2) class here is consistent with the analysis conducted in those cases and in no way suggests some hypothetical abuse of this critical civil rights tool.

## CONCLUSION

For the reasons set forth above and in Plaintiff's Motion, the Court should grant her Motion appoint Plaintiff as class representative, and appoint Plaintiff's counsel to represent the certified class pursuant to Fed. R. Civ. P. 23(g).

Respectfully submitted,

/s Corey M. Shapiro
Corey M. Shapiro
William E. Sharp
Bethany N. Baxter
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746 ext. 206
corey@aclu-ky.org
wsharp@aclu-ky.org
bbaxter@aclu-ky.org
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 4, 2025, I filed the foregoing *via* the Court's CM/ECF filing system, which will send electronic notice to the following:

Justin D. Clark
Victor B. Maddox
Aaron J. Silletto
Lindsey R. Keiser
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Justind.clark@ky.gov
Victor.maddox@ky.gov
Aaron.silletto@ky.gov
Lindsey.keiser@ky.gov
*Counsel for Intervening Defendant Ky. Attorney General*

Stephen S. Burchett
K. Brad Oakley
M. Jane Brannon
Jennifer Horan
JACKSON KELLY PLLC
100 West Main Street, Suite 700
P.O. Box 2150
Lexington, Kentucky 40588-2150
Stephen.burchett@jacksonkelly.com
kboakley@jacksonkelly.com
mjbrannon@jacksonkelly.com
Jennifer.horan@jacksonkelly.com
*Counsel for Defendant ARH*

Angela T. Dunham
Allison R. Brown
Justice & Public Safety Cabinet
Office of Legal Services
125 Holmes Street, 2nd Floor
Frankfort, Kentucky 40601
Angela.dunham@ky.gov
Allison.brown@ky.gov
*Counsel for Defendants Crews and Burkett*

/s Corey M. Shapiro
Corey M. Shapiro
ACLU OF KENTUCKY FOUNDATION