UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> COOKIE CREWS, in her official capacity as Commissioner of the Ky. Department of Corrections; DENISE BURKETT, in her official capacity as Director of Ky. Dept. of Corrections' Division of Medical Services; APPALACHIAN REGIONAL HEALTHCARE, INC., <br><br> Defendants | Case No. 5:25-cv-00238-GFVT <br><br> *Electronically filed* |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTIONS FOR A PRELIMINARY INJUNCTION [R. 4] AND CLASS
CERTIFICATION [R.3]**

Pursuant to this Court's Order [R. 21], Plaintiff submits her supplemental brief in support of her motions for a preliminary injunction and class certification. [R. 4; R. 34; R.3 ; R. 36.]

**I.    Likelihood Of Success On The Merits**

    **A.    The evidence adequately establishes Plaintiff's Gender Dysphoria diagnosis**

The Attorney General devotes much of his argument to reasserting that Plaintiff has not adequately proven that she has been properly diagnosed with Gender Dysphoria. [R. 41, at PageID #523-27.] But that is incorrect.

Initially, it is worth noting that "[t]he purpose of a preliminary injunction is merely to *preserve the relative positions of the parties until a trial on the merits can be held*. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved,

*a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearin*g." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added). *See also Blaylock v. Cheker Oil Co.,* 547 F.2d 962, 965 (6th Cir.1976) ("[t]he general function of a preliminary injunction is to maintain the status quo pending determination of an action on its merits").

Nevertheless, the evidence (and party admissions) already in the record more than sufficiently establish Plaintiff's Gender Dysphoria diagnosis, and it is further supported by the accompanying medical records attached as Exhibit 1.[1]  Specifically, during the approximately ten (10) years Plaintiff has been in the custody of the Department of Corrections, she has been housed at multiple facilities and seen numerous medical and mental health providers who have noted in her records her Gender Dysphoria diagnosis and provided treatment for it. For example, Dr. Uy, a licensed endocrinologist, has been treating Plaintiff's Gender Dysphoria since at least October 13, 2021. [Exh. 1, at Plaintiff_001497.] But the Attorney General, having reviewed those records, says that is not enough. [R. 41, at PageID # 525.][2]

Dr. Uy, of course, has already expressed her professional judgment that continuation of Plaintiff's HRT care at the level recommended on May 28, 2025 is appropriate to treat Plaintiff's Gender Dysphoria, as long as it is medically indicated. [R. 24-2, at PageID #372.] Again, the

---

[1]     Simultaneous with the filing of this motion, Plaintiff moves for leave to file Exhibit 1 under seal.

[2]     The Dept. of Corrections' healthcare contractor, Wellpath, produced approximately 2,000 pages of medical records to Plaintiff's counsel, which the Attorney General then subpoenaed. However, even a cursory review of those records indicates that there are years' worth of Plaintiff's medical records absent from Wellpath's production, including the absent records noted by Dr. Laidlaw.

2

Attorney General says that is not enough, and he points to the doctor's statement that it is her "understanding" that Plaintiff "has been diagnosed with Gender Dysphoria by a mental health professional." [R. 41, at PageID #525 n.1.] Setting aside the Attorney General's implicit aspersion that Dr. Uy and every other medical provider who has treated Plaintiff's Gender Dysphoria did so either unnecessarily or without a proper basis, the Attorney General ignores the fact that APRN Ferguson's May 28, 2025 note reflects that ARH had "received [the] psych letter documenting [Plaintiff's] gender dysphoria" diagnosis. [R. 24-Sealed Exh. 4, at p. 5.] That, too, is not enough according to the Attorney General.

Indeed, the Attorney General further ignores the fact that *prior* to filing his supplemental brief, the DOC Defendants *admitted* Plaintiff's Gender Dysphoria diagnosis *as well as* her having received HRT treatment since 2016 while in DOC's custody. [*See* R. 39, at PageID #512 ¶ 38 (DOC Defendants admitting that medical providers have prescribed HRT to treat Plaintiff beginning in 2016); *id*. at PageID #512 ¶ 39 (DOC Defendants admitting that Plaintiff has received HRT since 2016 while in DOC's custody); *id*. at PageID #514 ¶ 55 (same); *id*. at PageID #514 ¶ 53 (DOC Defendants admitting that Plaintiff has been diagnosed with Gender Dysphoria).] Similarly, ARH conceded in its response brief that both Dr. Uy and APRN Ferguson "recommended on multiple occasions that Ms. Marcum receive gender-affirming hormone therapy" [R. 24, at PageID #349], and that they both "believe that the standard of care for Ms. Marcum is to continue gender-affirming therapy." [*Id*. at PageID #350.] But the party admissions of the healthcare company providing specialized care for Plaintiff's Gender Dysphoria and the governmental agency that has maintained custody of (and been responsible for providing healthcare to) Plaintiff for approximately ten years is also insufficient per the Attorney General.

3

The Attorney General is similarly unconvinced by the repeated references in Plaintiff's medical records to her Gender Dysphoria diagnosis (upon which various treatment decisions have been based for years). [*See, e.g.*, Exh. 1, at Plaintiff_000153 (Licensed Psychologist John E. Penezic's Mar. 1, 2022 SOAP note documenting Plaintiff's "long-standing history of gender dysphoria"); Plaintiff_001476 (Mar. 4, 2022 note reflecting increase in estradiol based on telemed Endocrinology order); Plaintiff_0001497 (Dr. Fortwengler's Nov. 18, 2021 SOAP note regarding changes to Plaintiff's HRT care).]

Here, Plaintiff has established with "sufficient evidence" her diagnosis of Gender Dysphoria, and the Attorney General's claims to the contrary are without merit. *See, e.g., Plain Dealer Pub. Co. v. Cleveland Typographical Union No. 53*, 520 F.2d 1220, 1228 (6th Cir. 1975) ("While in a proceeding for preliminary injunction a plaintiff need not prove its case to the same degree as would be required at a trial upon the merits, the record must reflect sufficient evidence … to satisfy the 'strong showing of probable success.'").

> **B.    The weight of medical opinion supports HRT care as a necessary and appropriate treatment for some diagnosed with Gender Dysphoria.**

The Attorney General also seeks to cast doubt on the medical community's recognition of HRT as an appropriate form of healthcare for Gender Dysphoria, as well as their recognition of it as a necessary treatment (without an adequate alternative) for some diagnosed with that condition. [R. 41, at PageID #527-29.] The Attorney General's own expert, Dr. Laidlaw, has recently testified that he does not believe that "adults should be obstructed or blocked from receiving, you know, gender affirmative hormones or surgeries provided – provided, again, they have capacity to consent." R. 25-6: Laidlaw Depo. Xcript, at 3, *Robinson v. Labrador*, No. 1:24-cv-00306-DCN (D. Idaho 2024) (citing Dr. Laidlaw's deposition testimony from *C.P. v. Blue Cross Blue Shield of Illinos*, 3:20-cv-06145-RJB (W.D. Wash. 2022)). While he also testified that a medical case

4

"could" be made for such treatment harming adults, he declined to opine on it. *Id*. at 4. So, the claimed medical "uncertainty" was not so prevalent then to warrant an adverse opinion from Dr. Laidlaw.

Indeed, there is no genuine medical dispute as to the efficacy, relative safety, and necessity of HRT care as a treatment option for Gender Dysphoria for those for whom it is medically indicated. [R. 4-1, at PageID #81-82, 85, 88-89.] Indeed, even though the Attorney General proffers four articles to purportedly support his proposition that "any necessity for HRT remains uncertain," [R. 41, at PageID#528], that assertion misconstrues those articles, one of which even supports the proposition that HRT is "an essential component of care." First, nothing in the Anderson study suggests HRT is an inappropriate or otherwise disputed treatment for gender dysphoria in adults. [R. 41-3, at PageID #541 (providing introduction to article stating "Patients with gender dysphoria who receive treatment report happier lives. There is also a decreased rate of suicidality among patients who receive appropriate gender affirmation treatment. Treatment starts with hormone therapy.").] That article further describes the various treatment options and notes that the treatment should be flexible, and it includes HRT as a valid option. [*Id.* at PageID #543.]

Similarly, the Hruz article [R. 41-4] does not suggest that HRT in adults is either ineffective or medically unnecessary, and in any event two different courts have found that Dr. Hruz was not qualified to offer expert testimony regarding treatment of gender dysphoria. *See Brandt v. Rutledge*, 677 F. Supp. 3d 877, 916 (E.D. Ark. 2023) (Hruz was "unqualified to offer relevant expert testimony and offered unreliable testimony. [His and other] opinions regarding gender-affirming medical care for adolescents with gender dysphoria are grounded in ideology rather than science"); *Kadel v. Folwell*, 620 F. Supp. 3d 339, 364 (M.D.N.C. 2022)*, vacated on other grounds,*

5

*Folwell v. Kadel*, --- S. Ct. ---, 2025 WL 1787687 (June 30, 2025); *see also Koe v. Noggle*, 688 F. Supp. 3d 1321, 1336 (N.D. Ga. 2023) (noting an amicus brief submitted to the Supreme Court by Dr. Hruz "contains other disparaging remarks, including some that associate transgender identity with 'delusion' and 'charade.' This kind of inflammatory rhetoric—in a brief submitted to the Supreme Court, no less—casts doubt on the objectivity of Dr. Hruz's testimony.") (cleaned up); *Doe v. Ladapo*, 676 F.Supp.3d 1205, 1210-11 (N.D. Fla. June 6, 2023) ("Dr. [Paul] Hruz fended and parried questions and generally testified as a deeply biased advocate, not as an expert sharing relevant evidence-based information and opinions. I do not credit his testimony.").

The Haupt study merely notes the lack of randomized-controlled trials (RCTs) of estradiol in the treatment of Gender Dysphoria without addressing whether HRT is, in fact, clinically ineffective or should not be considered medically necessary treatment for Gender Dysphoria. And while the Attorney General quotes from the Baker article about the lack of studies on the effects of hormone therapy on death by suicide, he omits the full conclusion of that study [R. 41, at PageID #528 n.4], which actually stands for the proposition that HRT *is* medically appropriate to treat Gender Dysphoria. The article concludes stating::

> Despite the limitations of the available evidence, however, our review indicates that gender-affirming hormone therapy is likely associated with improvements in QOL, depression, and anxiety. No studies showed that hormone therapy harms mental health or quality of life among transgender people. These benefits make hormone therapy an essential component of care that promotes the health and well-being of transgender people.

[R. 41-6, at PageID #592.]

Thus, the record does not demonstrate that there is the type of uncertainty or disagreement that would justify ignoring both Plaintiff's treating physician and the weight of medical authority.

And as Dr. Karasic has noted, "the protocols and policies set forth by the WPATH Standards of Care and the Endocrine Society are cited as authoritative by the major professional

medical and mental health associations in the United States, including the American Medical Association . . .the American Psychiatric Association, the American Psychological Association, the American College of Obstetrics and Gynecology, the American College of Physicians, and the Word Medical Association, among others." [*Id*. at PageID #88.] Moreover, not even the Trump administration disputes that "gender dysphoria exists and that it can have serious manifestations," and that "hormone therapy is an important method for the treatment of gender dysphoria" for some who are diagnosed with it. *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *2 (D.D.C. June 3, 2025) (noting that the parties "agree" on these points).

The Attorney General also raises a red herring argument regarding the "off label" use of estradiol and spironolactone to treat Gender Dysphoria as purported support for the state's ability to ban HRT as a treatment option for incarcerated Kentuckians. [R. 41, at PageID #528-29.] But "[o]ff-label use is not unlawful under state or federal law." *Stiens v. Bausch & Lomb Inc.*, 626 S.W.3d 191, 203 (Ky. Ct. App. 2020) (citing *United States v. Caronia*, 703 F.3d 149, 166-67 (2d Cir. 2012)). Indeed, "[d]octors are permitted and even encouraged to prescribe drugs for both FDCA-approved and -unapproved uses for the benefit of their patients." *Id.* at 203. The evidentiary record establishes that HRT is a necessary and appropriate form of treatment for some who are diagnosed with Gender Dysphoria, including Plaintiff. [R. 4-2; R. 24-2; R. 24-3; Exh. 1.] This argument, too, is without merit.[3]

---

[3]   Based on his statements, the Attorney General's proffered expert, Dr. Laidlaw: (1) has never conducted any original, peer reviewed research about gender dysphoria; (2) has not published any scientific, peer-reviewed literature on gender dysphoria; (3) has never diagnosed a patient with gender dysphoria; and (4) is not a psychiatrist, psychologist, or mental health provider. [R. 20-1, at PageID #217.]

Further, Dr. Laidlaw's opinions regarding gender reassignment surgeries and juvenile treatment are wholly irrelevant to this case. [*Id*. at PageID #235-37 (surgeries); PageID #220, 239, 240, 252 (minors).] And his unprofessional attempts to malign Ms. Marcum and draw unfounded

  **C.**  **Denying prescribed treatment for prisoners diagnosed with a serious medical need pursuant to a blanket policy is a breach of adequate care under the Eighth Amendment.**

 The Attorney General improperly conflates the General Assembly's authority in regulating health and welfare with what has transpired here. [R. 41, at PageID #529 (citing *L.W. v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023)).] Specifically, KRS § 197.280(2) and (3) erect a blanket ban on a form of healthcare that is necessary and appropriate for some prisoners diagnosed with Gender Dysphoria for which there is no adequate alternative. [R. 4-1, at PageID #82 ¶ 29 ("For individuals for whom gender-affirming medical care is indicated, there are no alternative evidence-based treatments for gender dysphoria."); *id*. at PageID # 89 ¶ 66 ("For patients for whom gender-affirming medical care is indicated, no alternative treatments have been demonstrated to be effective."); *id*. at PageID #92 ¶ 77 ("For patients for whom gender-affirming medical care is indicated, no alternative treatments have been demonstrated to be effective.").]

 To be certain, the state is able to regulate for public health and safety. But the state's authority to do so is nonetheless *subject to federal statutory and constitutional restraints*. *See, e.g.*, *City of Covington, Ky. v. Chesapeake & Ohio Ry. Co.*, 708 F. Supp. 806, 807-08 (E.D. Ky. 1989) (holding that despite city's regulation limiting train speed adopted for public safety and pursuant to a state statutory delegation of authority, the federal Railway Safety Act preempted the city ordinance and rendered void the state statute). In the context of medical care for prisoners, for example, the Eighth and Fourteenth Amendments guarantee prisoners the right to adequate

---

conclusions about her credibility and trustworthiness are improper and should be disregarded by the Court. [*Id*. at PageID #248-51.] *See Starr v. Hill*, No. 2:10-CV-2070-V, 2012 WL 12868271, at *4 (W.D. Tenn. Mar. 1, 2012) ("Witness credibility is solely within the jury's province. It is inappropriate for an expert witness to comment on another witness's credibility.") (internal citation omitted).

medical treatment. *Estelle v. Gamble*, 429 U.S. 97 (1976). And the constitutional analysis by which deliberate indifference claims proceed serves as the *floor* of prisoners' right to adequate medical treatment; the state is free to provide more protection for prisoners' rights but it cannot provide less. *See Commonwealth v. Reed*, 647 S.W.3d 237, 256 (Ky. 2022) ("We recognize the general and well-accepted legal principle that the federal constitution simply provides a floor of constitutional protection. While the federal constitution prevails over inconsistent state laws based on the Supremacy Clause, states are always free to provide expanded constitutional protections to their citizens in our system of cooperative federalism."); WILLIAM J. BRENNAN, JR., *The Bill of Rights and the States: The Revival of State Constitutions As Guardians of Individual Rights*, 61 N.Y.U. L. Rev. 535, 550 (1986) ("[T]he Fourteenth Amendment fully applied the provisions of the Federal Bill of Rights to the states, thereby creating a federal floor of protection and that the Constitution and the Fourteenth Amendment allow diversity only *above and beyond* this federal constitutional floor.").

Here, Plaintiff has established why she is likely to prevail (either facially or, as an alternative, as applied to her situation) on her challenge to the Public Funds Ban under that Eighth Amendment analysis: (a) she has established that she has an objectively serious medical need—Gender Dysphoria [R. 4-2; R. 24-2; R. 24-3]; (b) there are (and the Defendants are subjectively aware of the) risks of harm associated with failing to adequately treat that condition [R. 4-1; R. 4-2; R. 24; Exh. 1, at Plaintiff_001004 (noting past history of genital self-harm), 000247 (noting ideations of "genital self-mutilation")]; (c) HRT care is both medically indicated for Plaintiff (and the class members) and is the standard of care for her continued treatment according to her medical providers' professional opinions [R. 24-2; R. 24-3; R. 24-Sealed Exh. 4]; and (d) KRS § 197.280(2) and (3) erect a blanket ban on such care for Kentucky prisoners without regarding to

9

contrary medical judgment or individualized assessment. But as other courts have recognized, "*blanket prohibitions on some types of treatment that professional and community standards indicate may sometimes be necessary for the adequate treatment of [Gender Identity Disorder]. . ..without consideration of the medical requirements of individual inmates, is exactly the type of policy that was found to violate Eighth Amendment standards in other cases both in this district and in other circuits.*" *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 247 (D. Mass. 2012) (emphasis added) (citing *Kosilek v. Moheny*, 221 F.Supp.2d 156, 193 (D. Mass. 2002); *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003); *Fields v. Smith*, 653 F.3d 550, 558-59 (7th Cir. 2011)).

II. **The Irreparable Harm Factor Weighs Heavily In Plaintiff's Favor.**

Further, there is ample evidence in the record to find that Plaintiff will suffer irreparable harm absent the injunction. Specifically, Plaintiff has established that her diagnosis of Gender Dysphoria pre-dates her incarceration [R. 4-2], and that it has persisted through her pre-trial detention and while in DOC's custody. [*Id*.; *see also attached* Exh. 1; R. 39, PageID #510 ¶ 20 (DOC defendants admitting DOC previously authorized HRT to treat some individuals, including Plaintiff); PageID #512 ¶¶ 38-39 (DOC defendants admitting that medical providers prescribed HRT to treat Plaintiff beginning in 2016); PageID #514 ¶¶ 53, 56 (DOC Defendants admitting that Plaintiff has been diagnosed with Gender Dysphoria).] *See* also *Robinson v. Labrador*, 2024 WL 4953686, at *5 (D. Idaho Dec. 3, 2024) ("However, it remains true that Plaintiffs' statements are sufficient to show at least a likely increase in emotional stress and a likely decrease in sense of well-being if they lose access to hormone therapy.") (cleaned up).

Moreover, the attached medical records further reinforce that absent injunctive relief blocking enforcement of the Public Funds Ban (and thus permitting Plaintiff's providers to continue providing HRT care as long as it remains medically indicated), Plaintiff will suffer

10

irreparable harm due to the attendant physical and psychological harms posed by her untreated diagnosis. [*See attached* Exh. 1, at Plaintiff_000247 (Licensed Psychological Associate's Oct. 13, 2022 SOAP note documenting Plaintiff's reported ideations of genital self-mutilation but denials of intention or plan to act on them); Plaintiff_001004 (Nurse Practitioner Puckett's Dec. 19, 2022 SOAP note documenting Plaintiff's social history as including a hospitalization for "genital reconstruction due to self harm").] *See also Robinson*, 2024 WL 4953686, at *5 ("Even though the Plaintiffs' declarations are not necessarily the strongest possible evidence of irreparable harm, the Court will not require proof of irreparable harm through tapering Mills and Heredia off their hormone therapy to see if their anxiety, depression, and suicidality returns."); *Phillips v. Michigan Dep't of Corr.*, 731 F. Supp. 792, 799 (W.D. Mich. 1990), *aff'd,* 932 F.2d 969 (6th Cir. 1991); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 797–98 (9th Cir. 2019) (irreparable harm established from "severe, ongoing psychological distress and the high risk of self-castration and suicide"); *Doe v. Georgia Dep't of Corr.*, 730 F. Supp. 3d 1327, 1338 (N.D. Ga. 2024), *appeal dismissed as moot*, 2025 WL 1206229 (11th Cir. Mar. 6, 2025) ("Given Plaintiff's prior attempts at self-castration and suicide, Defendants clearly know the risk of harm Plaintiff faces from untreated gender dysphoria.").

Thus, the Attorney General's assertions to the contrary are without merit.

### III. Class Certification Is Appropriate And Should Be Granted Or, Alternatively, Further Discovery Permitted As To Class Certification.

First, in again attacking the numerosity element of Rule 23, the Attorney General ignores the facts. Specifically, in January 2025, the Kentucky Department of Corrections identified 67 individuals in its care who, under the care of an endocrinologist, were receiving HRT for the treatment of Gender Dysphoria. RECORDING OF JAN. 13, 2025 SENATE ADMINISTRATIVE REGULATION REVIEW SUBCOMMITTEE MEETING, 47:14–47:25, at http://www.youtube.com/live/

11

wM_Tpv3ZRaM?t=2431s (last visited August 8, 2025). Ms. Leah Boggs, General Counsel to the Kentucky Department of Corrections, acknowledged that prior to passage of SB 2, "inmates have received hormone therapy for years" while in DOC's custody. *Id*. General Counsel Boggs further testified that:

> When the inmate's physician—and these endocrinologists are independent physicians, they are not Department employees—when they say someone needs hormone treatment for post-menopause -or- menopause, postpartum depression, low testosterone, any medical need—that's when the Department would pay for it. But an independent endocrinologist, as far as hormones go – [like] other drugs, the physician would have to say this is necessary to treat a medical need.

*Id*. at 50:20- 50:55.

General Counsel Boggs also testified in January 2025 that there were 12,842 individuals housed in Kentucky Department of Corrections facilities, and 467 of them were receiving hormone therapy for various medical conditions, including Gender Dysphoria. *Id*. At 51:24 – 51:50. She further made clear that "of that [467] number, 67—***based on the independent endocrinologist's recommendation that it's a serious medical need—67 inmates are receiving those hormones for Gender Dysphoria.***" *Id*. at 52:06 – 52:37 (emphasis added).

Plaintiff is one of the sixty-seven individuals identified by the Kentucky Department of Corrections as receiving HRT for Gender Dysphoria based on a serious medical need identified by her physician. This class is as easily identifiable today as it was on January 13, 2025, as conceded by the Attorney General. [*See* R. 29, at PageID #439.] General Counsel Boggs' testimony is consistent with Plaintiff's previous reports regarding numerosity, and it further establishes that the defined class are all persons who have been diagnosed with Gender Dysphoria and who have been identified as having a serious medical need for HRT treatment.

The Attorney General's argument that class certification requires an individualized medical assessment for each putative member is misplaced. [R. 41, at PageID #531-32.] The putative class

12

is limited to individuals for whom an individual assessment has been made, and for whom a treating provider has recommended HRT care to address that serious medical need. The class is therefore narrowly defined and appropriate for certification. *Cf. Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *14 (D.D.C. June 3, 2025) ; *Robinson v. Labrador*, 747 F. Supp. 3d. 1331, 1334-37 (D. Idaho 2024) (finding numerosity satisfied where more than forty (40), and possibly as many as fifty-four (54) prisoners, were identified as having received hormone therapy for Gender Dysphoria prior to enforcement of challenged statute.).[4]

### IV. Counsels' Decision To Consistently Misgender Plaintiff Is Irrelevant And Should Be Disregarded.

Finally, counsel for the Attorney General—Lindsey Keiser, Victor Maddox, Justin Clark, and Aaron Silletto—have (unlike the Court and the other defendants' attorneys) consistently misgendered Plaintiff in this action, both in their filings and during oral argument, and even after Plaintiff requested that they refrain from doing so. [R. 36, at PageID #485 n.2.]  Their choice to do so is inconsistent with the common practice adopted in the United States Supreme Court and the Sixth Circuit Court of Appeals of using parties' preferred pronouns. *See Bostock v. Clayton Cnty., Georgia,* 590 U.S. 644 (2020); *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023); *Fedder v. CEMS of Ohio, Inc.,* No. 24-3028, 2024 WL 5319224 (6th Cir. Nov. 6, 2024); *Dijon v. Cent. Ohio Transit Auth.,* No. 22-3884, 2023 WL 4080153 (6th Cir. June 20, 2023); *Siefert v. Hamilton Cnty.*, 951 F.3d 753 (6th Cir. 2020); *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844 (6th Cir. 2017); *Nash v. United States*, No. 17-3739, 2018 WL 3424999 (6th Cir. Jan. 10, 2018).

---

[4] The remaining class certification factors have already been adequately addressed in Plaintiff's prior briefing and oral argument. [R. 3; R. 36.] However, in the event the Court finds that there is insufficient evidence in the record, Plaintiff respectfully requests that the Court permit limited discovery on whichever factor(s) are deemed lacking in evidentiary support.

And it must be noted that their doing so is neither evidence in the case nor relevant to any issue before the Court. *See* Fed. R. Evid. 401; *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 767 (E.D. Ky. 2020) (noting that "counsel argument is not evidence.").[5]

## CONCLUSION

For the forgoing reasons, as well as those contained in her initial motion and reply [R. 4; R. 34; R. 3; R. 36], Plaintiff respectfully requests that the Court grant her Motion for a Preliminary Injunction and Motion for Class Certification.[6]

Respectfully submitted,

/s William E. Sharp
William E. Sharp
Corey M. Shapiro
Bethany N. Baxter
ACLU OF KENTUCKY FOUNDATION
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746 ext. 218
wsharp@aclu-ky.org
corey@aclu-ky.org
bbaxter@aclu-ky.org
*Counsel for Plaintiff*

---

[5] Plaintiff does not allege defense counsel has engaged in professional misconduct. *See, e.g.*, SCR 3.130 (4.4(a)) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass . . . a third person"). Nor does Plaintiff seek, at this time, Court-ordered relief to end the practice, though it is within the Court's authority to do so. *See* SCR 4.300 (2.3)(B) (noting that a judge must not permit "court officials, or others subject to the judge's direction and control" to "manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation"). *See also Britton v. Dallas Airmotive, Inc.*, No. CV-07-547-EJL-LMB, 2009 WL 10677843, at *3 (D. Idaho July 2, 2009) ("Because litigation routinely creates situations that require counsel to make difficult choices on close issues, the principle of zealous advocacy is often treated as inconsistent with civility and professionalism. However, there is no inconsistency. 'In fact, quite the contrary, advocacy which is both civil and professional is by far the most effective.'") (quoting JOSEPH W. RYAN, JR., *Things Your Mother Should Have Taught You*, A.B.A. Litig. News 8, 9 (May 1998)).

[6] If the Court requires additional evidentiary support before ordering preliminary injunctive relief, Plaintiff respectfully requests the Court grant expedited discovery and the opportunity for the parties to resubmit briefing.

## CERTIFICATE OF SERVICE

I certify that on August 11, 2025, I filed the foregoing *via* the Court's CM/ECF filing system, which will send electronic notice to the following:

Justin D. Clark
Victor B. Maddox
Aaron J. Silletto
Lindsey R. Keiser
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Justind.clark@ky.gov
Victor.maddox@ky.gov
Aaron.silletto@ky.gov
Lindsey.keiser@ky.gov
*Counsel for Intervening Defendant Ky. Attorney General*

Stephen S. Burchett
K. Brad Oakley
M. Jane Brannon
Jennifer Horan
JACKSON KELLY PLLC
100 West Main Street, Suite 700
P.O. Box 2150
Lexington, Kentucky 40588-2150
Stephen.burchett@jacksonkelly.com
kboakley@jacksonkelly.com
mjbrannon@jacksonkelly.com
Jennifer.horan@jacksonkelly.com
*Counsel for Defendant ARH*

Angela T. Dunham
Allison R. Brown
Justice & Public Safety Cabinet
Office of Legal Services
125 Holmes Street, 2nd Floor
Frankfort, Kentucky 40601
Angela.dunham@ky.gov
Allison.brown@ky.gov
*Counsel for Defendants Crews and Burkett*

/s William E. Sharp
William E. Sharp
ACLU OF KENTUCKY FOUNDATION